[No. S026003. Mar. 18, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD GUITON, Defendant and Appellant.

COUNSEL

Kathleen Bryan, under appointment by the Supreme Court, for Defendant and Appellant.

Fern M. Laethem, State Public Defender, and Philip M. Brooks, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield and Gary W. Schons, Assistant Attorneys General, Janelle B. Davis, Yvonne H. Behart, Frederick R. Millar, Jr., Robert M. Foster and Pamela A. Ratner, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ARABIAN, J.—After hearing the evidence, the jury in this case was allowed to convict defendant, Ronald Guiton, of a felony if it found he either sold or transported cocaine on the occasion in question. There was insufficient evidence to support a finding that he sold cocaine. Because of this deficiency, the Court of Appeal reversed the conviction. We are asked to decide whether the reversal was proper where sufficient evidence existed that defendant transported cocaine. That question requires examination of two cases that reached different results: our decision in *People* v. *Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468] (*Green*) and the recent United States Supreme Court decision of *Griffin* v. *United States* (1991) 502 U.S. __ [116 L.Ed.2d 371, 112 S.Ct. 466] (*Griffin*).

### I. FACTS

During the morning of January 3, 1990, an undercover police officer, watching through the window of a second-story apartment in Riverside, observed defendant speaking with other men outside the gates of the apartment complex. At one point, defendant said, "Here, hold this," and handed a clear plastic bag to another person, later identified as Eddie Lee. The bag appeared to contain a white lumpy substance. Lee placed the bag into his right front pants pocket. Defendant walked out of sight through the apartment complex entrance.

A few minutes later, a white automobile pulled up to the curb in front of the apartment complex. The driver got out of the car and approached Lee.

The driver and Lee spoke. Their hands may have been moving, but the officer could not see for sure. The driver returned to the white car with his right hand in a closed fistlike position. The officer could not see defendant while the car was present.

A short time after the white car left, defendant emerged into view, and approached Lee and the other men. Lee handed something to defendant, which defendant placed into his right front pants pocket. The men then entered another car parked in front of the apartment complex, and drove away. Lee was the driver, and defendant was in the front passenger seat. The police stopped and searched the car.

Near defendant's feet were found two plastic bags containing rock cocaine and a small bag of marijuana. A search of defendant's person revealed $490 in cash, a pager, and some marijuana.

Defendant was charged in count one with selling or transporting cocaine (Health & Saf. Code, § 11352), and in count two with possession of cocaine for sale (Health & Saf. Code, § 11351). There were also certain enhancement allegations. A jury convicted defendant of both counts; thereafter, the court found the enhancement allegations true. Defendant was sentenced to state prison for a total of seven years.

The Court of Appeal affirmed the conviction on count two, but reversed the conviction on count one and remanded the matter for resentencing. It found that, although the jury was permitted to convict defendant of that count on either of two grounds—that he sold *or* transported the cocaine—there was insufficient evidence to support a finding that he sold cocaine. As the court explained, "Here, the People would presumably argue that the defendant sold cocaine to the driver of the white car. But to reach that conclusion, we must be able to find, from the evidence, that Lee is the agent of the defendant, that Lee sold something to the driver, and that the thing sold to the driver was cocaine. Instead, each of those steps requires speculation. For instance, there is no evidence that that driver bought anything. Even if he did, there is no evidence of what he bought, since that car was apparently never stopped. We find that, as a matter of law, this evidence is insufficient to support the prosecution's theory that the defendant sold cocaine."

The court also found that it could not determine from the record upon which basis the jury verdict rested—the valid one of transporting cocaine or the invalid one of selling cocaine—and therefore concluded that our decision in *Green, supra,* 27 Cal.3d 1, compelled reversal. We granted review.

## II. Discussion

### A. *Introduction*

The Attorney General does not contend that the evidence was sufficient to support a conviction on the theory that defendant sold cocaine. Rather, he argues that count one should be affirmed because the alternate ground—transportation of cocaine—*was* supported by substantial evidence. He relies primarily on *Griffin, supra,* 502 U.S. __ [116 L.Ed.2d 371, 112 S.Ct. 466]. Defendant counters that *Green, supra,* 27 Cal.3d 1, states the law in California, and that under its rule, reversal is required.

We conclude that the *Green* rule and the *Griffin* rule, properly construed, can and should be harmonized. Each applies to and governs a different situation. We adopt the *Griffin* rule when applicable in its domain, while reaffirming the *Green* rule (as construed herein) in its own. This case is governed by *Griffin,* not *Green,* and *Griffin* mandates affirmance. Hence, we reverse the Court of Appeal to the extent it reversed the conviction of count one.

### B. *The Green Rule*

In *People* v. *Green, supra,* 27 Cal.3d 1, defendant was convicted of first degree murder, robbery and kidnapping; special circumstance allegations that the murder was committed during the commission of robbery and kidnapping were found true. The portion of *Green* relevant to this issue involves the kidnapping count and the related kidnapping special circumstance. (*Id.* at pp. 62-74.)

Upon reviewing the facts, we identified three distinct segments of asportation of the victim upon which the jury could have based its kidnapping verdict. (*Green, supra,* 27 Cal.3d at pp. 62-63.) As to the first segment, we found that the trial court misinstructed the jury on the law. (*Id.* at pp. 63-64.) As to the second, driving the victim to the murder scene, we found no error. The third occurred when the victim was forced to walk from the parked car to the spot where she was murdered. (*Id.* at pp. 63, 65.) We found that the distance she walked, about 90 feet, "was insufficient as a matter of law to support" the kidnapping verdict. (*Id.* at p. 67.)

Having found error as to two of the three possible segments of asportation, we next considered the consequences of the error. We could not determine from the record whether the jury based its verdict on either of the "legally insufficient segments of [the victim's] asportation. . . ." (*Green, supra,* 27

Cal.3d at p. 67.) The only instruction the court gave the jury regarding distance was that the asportation must be " 'for a substantial distance, that is, a distance more than slight or trivial.' " (*Id.* at p. 68.) "No further guidance was provided" on this question. (*Ibid.*) Under the circumstances, we stated this general rule: "[W]hen the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others legally incorrect, and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand." (*Id.* at p. 69.)

We noted that this rule "is perhaps most commonly invoked when the alternate theory is legally erroneous," that is, when one of the theories is infected by prejudicial error such as inadmissible evidence or incorrect instructions. (*Green, supra,* 27 Cal.3d at p. 69.) However, in the portion of the discussion most pertinent to this case, we went on to state that the "same rule applies when the defect in the alternate theory is not legal but factual, i.e., when the reviewing court holds the evidence insufficient to support the conviction on that ground." (*Id.* at p. 70.) We analyzed two cases, one involving alternate theories of first degree murder (*People* v. *Anderson* (1965) 63 Cal.2d 351 [46 Cal.Rptr. 763, 406 P.2d 43] [theories of premeditation, murder in the perpetration of mayhem, and murder by torture]), and one involving alternate theories of second degree murder (*People* v. *Houts* (1978) 86 Cal.App.3d 1012 [150 Cal.Rptr. 589] [theories of malice and second degree felony murder committed in the course of an attempted sodomy]). In both cases, one of the theories was not supported by sufficient evidence and the reviewing court could not determine from the record upon which theory the guilty verdicts were based. The convictions were therefore reversed. (*Anderson, supra,* at pp. 359-360; *Houts, supra,* at pp. 1019-1022.)

We concluded in *Green, supra,* 27 Cal.3d at page 71, that "the record likewise contains evidence that could have led the jury to predicate its kidnaping verdict on the legally sufficient portion of [the victim's] asportation. But it also contains evidence that could have led the jury to rely instead on either of the legally insufficient portions of that movement. The instructions permitted the jury to take the latter course; and the district attorney expressly urged such a verdict in his argument, at least with respect to the final 90 feet that the victim was transported. We simply cannot tell from this record which theory the jury in fact adopted." We therefore reversed the kidnapping conviction and the related kidnapping special circumstance. (*Id.* at p. 74.)

C. *The Griffin Rule*

In *Griffin* v. *United States, supra,* 502 U.S. at page __ [116 L.Ed.2d at pages 375-376, 112 S.Ct. at page 468], a 23-count indictment was returned

against the petitioner and 2 codefendants. Petitioner was charged only with one count of conspiracy, which was alleged to have had two objects. "However, because testimony anticipated by the Government from one of its witnesses did not materialize, the evidence did not connect petitioner to" the second of the alleged objects. (*Ibid.*) There was sufficient evidence to connect the petitioner to the first object and the codefendants to both. The petitioner requested but was refused both an instruction that she could be convicted only on the basis of the first object and special interrogatories asking the jury to identify the object or objects upon which it based its verdict. The instructions permitted the jury "to return a guilty verdict against petitioner on [the conspiracy count] if it found her to have participated in *either one* of the two objects of the conspiracy." (*Ibid.*, italics in original.) The jury returned a general guilty verdict on the conspiracy charge against all three defendants. (*Ibid.*)

Based on these facts, the high court identified the issue as "whether, in a federal prosecution, a general guilty verdict on a multiple-object conspiracy charge must be set aside if the evidence is inadequate to support conviction as to one of the objects." (*Griffin, supra*, 502 U.S. at p. __ [116 L.Ed.2d at pp. 375-376, 112 S.Ct. at p. 468].) The court answered the question in the negative.

After reviewing the common law rule, the court discussed and distinguished several prior cases which found that one or more invalid bases for conviction required reversal despite the presence of a valid basis. (*Yates* v. *United States* (1957) 354 U.S. 298 [1 L.Ed.2d 1356, 77 S.Ct. 1064] [the applicable statute of limitations made one alleged object of a conspiracy invalid]; *Stromberg* v. *California* (1931) 283 U.S. 359 [75 L.Ed. 1117, 51 S.Ct. 532, 73 A.L.R. 1484] [one of the theories of guilt was unconstitutional]; *Williams* v. *North Carolina* (1942) 317 U.S. 287 [87 L.Ed. 279, 63 S.Ct. 207, 143 A.L.R. 1273] [similar to *Stromberg*]; *Cramer* v. *United States* (1945) 325 U.S. 1 [89 L.Ed. 1441, 65 S.Ct. 918] [two of three alleged overt acts of treason were legally insufficient under section 3 of article III of the federal Constitution, which provides that a conviction of treason against the United States requires two witnesses to the same overt act]; see *Griffin, supra*, 502 U.S. at p. __ [116 L.Ed.2d at pp. 377-381, 112 S.Ct. at pp. 470-472].) In each case, the high court had reversed the conviction because it could not determine (or, as stated in *Yates, supra*, 354 U.S. at p. 312 [1 L.Ed.2d at pp. 1371-1372], it was "impossible to tell") whether the verdict was based on a valid or an invalid ground.

The *Griffin* court found that the latter three cases, *Stromberg, Williams*, and *Cramer*, could properly be understood as an application of the "principle

that, where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." (*Griffin, supra,* 502 U.S. at p. __ [116 L.Ed.2d at pp. 378-379, 112 S.Ct. at p. 471].) It explained that *Yates* extended this rule "to a general verdict in which one of the possible bases of conviction did not violate any provision of the Constitution but was simply legally inadequate (because of a statutory time bar)." (*Id.* at p. __ [116 L.Ed.2d at pp. 379-380, 112 S.Ct. at p. 472].) It refused to further extend these cases, pointing out that "[p]etitioner cites no case, and we are aware of none, in which we have set aside a general verdict because one of the possible bases of conviction was neither unconstitutional as in *Stromberg,* nor even illegal as in *Yates,* but merely unsupported by sufficient evidence." (*Ibid.*)

In a discussion particularly relevant here, the *Griffin* court cited *Turner* v. *United States* (1970) 396 U.S. 398 [24 L.Ed.2d 610, 90 S.Ct. 642]. In *Turner,* the defendant challenged the sufficiency of the evidence to support a charge of "knowingly purchasing, possessing, dispensing, and distributing heroin" in a certain condition. (See *Griffin, supra,* 502 U.S. at p. __ [116 L.Ed.2d at pp. 379-382, 112 S.Ct. at pp. 472-473].) *Griffin* discussed *Turner* as follows: "We held that the conviction would have to be sustained if there was sufficient evidence of distribution *alone.* We set forth as the prevailing rule: 'when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged.' [Citations.]" (*Griffin, supra,* 502 U.S. at p. __ [116 L.Ed.2d at pp. 381-382, 112 S.Ct. at p. 473], italics in original.) It then stated that "a logical and consistent application of *Turner* demands that proof of alternative facts in conspiracy cases be treated the same as proof of alternative facts in other contexts." (*Ibid.*)

The petitioner in *Griffin* argued that the *Turner* rule should apply "only where one can be *sure* that the jury did not use the inadequately supported ground as the basis of conviction. That assurance exists, petitioner claims, when the prosecution presents *no evidence whatsoever* to support the insufficient theory; if the prosecution offers *some,* but insufficient, evidence on the point, as it did in this case, then the *Yates* 'impossible to tell' rationale controls." (*Griffin, supra,* 502 U.S. at p. __ [116 L.Ed.2d at pp. 381-382, 112 S.Ct. at p. 473], italics in original.) The high court rejected the contention. "This novel theory posits two different degrees of failure of proof—a failure that is *sufficiently* insufficient, to which *Turner* would apply, and one that is *insufficiently* insufficient, to which *Yates* would apply. Besides producing an odd system in which the greater failure of proof is rewarded, the rule seems to us full of practical difficulty, bereft of support in *Turner,* and without

foundation in the commonlaw presumption upon which *Turner* is based." (*Id.* at p. ___ [116 L.Ed.2d at pp. 381-383, 112 S.Ct. at pp. 473-474], italics in original.)

The petitioner also argued that the "distinction between legal error (*Yates*) and insufficiency of proof (*Turner*) is illusory, since judgments that are not supported by the requisite minimum of proof are invalid *as a matter of law* —and indeed, in the criminal law field at least, are constitutionally required to be set aside. See *Jackson* v. *Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Insufficiency of proof, in other words, is legal error." (*Griffin, supra*, 502 U.S. at p. ___ [116 L.Ed.2d at pp. 382-383, 112 S.Ct. at p. 474], italics in original.) The high court also rejected this argument. "This represents a purely semantical dispute. In one sense 'legal error' includes inadequacy of evidence—namely, when the phrase is used as a term of art to designate those mistakes that it is the business of judges (in jury cases) and of appellate courts to identify and correct. In this sense 'legal error' occurs when a jury, properly instructed as to the law, convicts on the basis of evidence that no reasonable person could regard as sufficient. But in another sense—a more natural and less artful sense—the term 'legal error' means a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the evidence. The answer to petitioner's objection is simply that we are using 'legal error' in the latter sense." (*Ibid.*)

The *Griffin* court thus drew a distinction between a mistake about the law, which is subject to the rule generally requiring reversal, and a mistake concerning the weight or the factual import of the evidence, which does not require reversal when another valid basis for conviction exists. It then arrived at the crux of its opinion: "That surely establishes a clear line that will separate *Turner* from *Yates*, and it happens to be a line that makes good sense. Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inade-quate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence [citation]." (*Griffin, supra*, 502 U.S. at p. ___ [116 L.Ed.2d at pp. 382-383, 112 S.Ct. at p. 474], italics in original.)

The court quoted with approval from *United States* v. *Townsend* (7th Cir. 1991) 924 F.2d 1385, 1414: " 'It is one thing to negate a verdict that, while

supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.' " (*Griffin, supra,* 502 U.S. at p. ___ [116 L.Ed.2d at pp. 382-383, 112 S.Ct. at p. 474].)

The high court cautioned trial courts against submitting to the jury theories lacking sufficient evidentiary support. "[I]f the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration." (*Griffin, supra,* 502 U.S. at p. ___ [116 L.Ed.2d at pp. 382-383, 112 S.Ct. at p. 474].) Nevertheless, the court concluded that the "refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction." (*Ibid.*)

D. *The Green and Griffin Rules Harmonized*

■ The Attorney General urges us to adopt the *Griffin* rule. Defendant urges us not to. ■ Defendant is correct that *Griffin,* which was based solely on federal law, is not binding on this court in its interpretation of state law. Nevertheless, a decision by the United States Supreme Court, and especially a unanimous one such as *Griffin* (Justice Blackmun wrote a short concurring opinion, but expressed no disagreement with the holding (502 U.S. at p. ___ [116 L.Ed.2d at pp. 382-383, 112 S.Ct. at pp. 474-475]); Justice Thomas did not participate), is entitled to "respectful consideration." (*People* v. *Teresinski* (1982) 30 Cal.3d 822, 836 [180 Cal.Rptr. 617, 640 P.2d 753].) Having carefully considered the opinion, we find it persuasive.

■ We agree with the high court that analyzing evidence, and determining the facts, are functions peculiarly within the expertise of juries. Although appellate courts review the sufficiency of the evidence supporting verdicts, such review is narrowly prescribed. "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a *reasonable trier of fact* could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255], italics added; see also *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781].)

This standard means that when an appellate court determines that the evidence was insufficient, it has concluded that no "reasonable" trier of fact

could have found the defendant guilty. When this occurs, an appellate court, or the trial court in the first instance, must intervene. In analyzing the prejudicial effect of error, however, an appellate court does not *assume* an unreasonable jury. Such an assumption would make it virtually impossible to ever find error harmless. An appellate court necessarily operates on the assumption that the jury has acted reasonably, unless the record indicates otherwise.

As the high court stated in discussing the prejudice prong of a claim of ineffective assistance of counsel, "The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." (*Strickland* v. *Washington* (1984) 466 U.S. 668, 695 [80 L.Ed.2d 674, 698-699, 104 S.Ct. 2052].) Thus, if there are two possible grounds for the jury's verdict, one unreasonable and the other reasonable, we will assume, absent a contrary indication in the record, that the jury based its verdict on the reasonable ground.

██ Defendant makes several arguments against this conclusion which are generally answered directly by *Griffin*. He reiterates the argument the petitioner made in *Griffin* that the distinction between factual and legal insufficiency is "illusory." As explained in *Griffin, supra,* 502 U.S. at page __ [116 L.Ed.2d at pages 382-383, 112 S.Ct. at page 474], quoted above, it is not illusory. He also argues that *Griffin* involved different *legal theories* of the case, not different acts whereby an offense can be committed. That misdescribes *Griffin* as well as *Turner* v. *United States, supra,* 396 U.S. 398, upon which *Griffin* relies.

Defendant seeks to distinguish *Griffin* on the basis that in that case, there was no evidence whatsoever connecting the petitioner to the invalid object of the conspiracy whereas here there was some, albeit insufficient, evidence of selling. He notes that the prosecutor argued briefly to the jury that defendant did sell cocaine as well as transport it. This contention, too, is countered in *Griffin*. We agree with the high court in rejecting the distinction between evidence that is sufficiently insufficient and evidence that is insufficiently insufficient.

We also disagree with defendant that the *Griffin* rule violates the reasonable doubt requirement or the requirement of jury unanimity. Here, there *was* sufficient evidence of guilt beyond a reasonable doubt on the independently valid ground of transporting cocaine. The jury was instructed that its verdict had to be unanimous and that all jurors had to agree that the defendant committed the same act.

For these reasons, we find that the *Griffin* rule "makes good sense" (*Griffin, supra,* 502 U.S. at p. __ [116 L.Ed.2d at pp. 382-383, 112 S.Ct. at p. 474]), and we adopt it. This then brings us to the question of *Green, supra,* 27 Cal.3d 1. Having adopted *Griffin,* must or should we now abandon the *Green* rule? We think not. The two rules can and should coexist.

Although the *Griffin* court recognized that "[i]n one sense" the sufficiency of the evidence is always a legal question, for purposes of this issue it carefully distinguished between two types of cases involving insufficient evidence: (a) those in which "a particular theory of conviction . . . is contrary to law," or, phrased slightly differently, cases involving a *"legally* inadequate theory"; and (b) those in which the jury has merely been "left the option of relying upon a *factually* inadequate theory," or, also phrased slightly differently, cases in which there was an "insufficiency of proof." (*Griffin, supra,* 502 U.S. at p. __ [116 L.Ed.2d at pp. 382-383, 112 S.Ct. at p. 474], italics added.) The former type of case is subject to the rule generally requiring reversal; the latter generally does not require reversal if at least one valid theory remains. (*Ibid.*) Among the examples the court gave for the former category, the one subject to the rule generally requiring reversal, is a case where the inadequate theory "fails to come within the statutory definition of the crime." (*Ibid.*)

The *Green* rule, as applied to the facts of that case, is readily construed as coming within the former category of a "legally inadequate theory" generally requiring reversal. At issue was whether 90 feet was sufficient asportation to satisfy the elements, or the "statutory definition," of kidnapping. There was no insufficiency of proof in the sense that there clearly was evidence from which a jury could find that the victim had been asported the 90 feet. Instead, we held that the distance was *"legally* insufficient." (*Green, supra,* 27 Cal.3d at p. 67, italics added.)

To analyze the *Green* facts in terms of *Griffin, supra,* 502 U.S. __ [112 S.Ct. 466], a jury would be well equipped to analyze the evidence and determine whether the victim had been asported, and to determine the distance of the asportation. The jury would, however, not be equipped to determine whether, as a matter of *law,* 90 feet is insufficient. A reasonable jury, given no specific guidance regarding the required distance (see *Green, supra,* 27 Cal.3d at p. 68), could have found 90 feet to be sufficient, and could have relied on that segment of asportation in its verdict. That being the case, reversal was appropriate. Nothing in *Griffin* casts doubt on the *Green* result.

We thus conclude that the rule in *Green, supra,* 27 Cal.3d 1, which we construe as applying only to cases of *legal* insufficiency in the *Griffin* sense,

survives our adoption of *Griffin, supra,* 502 U.S. __ [112 S.Ct. 466]. If the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground. But if the inadequacy is legal, not merely factual, that is, when the facts do not state a crime under the applicable statute, as in *Green,* the *Green* rule requiring reversal applies, absent a basis in the record to find that the verdict was actually based on a valid ground.[1]

We do not, however, hold that affirmance is always appropriate under *Griffin, supra,* 502 U.S. __ [112 S.Ct. 466], or reversal under *Green, supra,* 27 Cal.3d 1. These are general rules to apply in the absence of a basis in the record supporting the opposite result. But the record may sometimes affirmatively indicate that the general rule should not be followed.

Taking the *Griffin* situation first, although affirmance is the norm, reversal might be necessary if the record affirmatively demonstrates there was prejudice, that is, if it shows that the jury did in fact rely on the unsupported ground. As discussed above, we will not *assume* prejudice, but the record may show it. *Griffin, supra,* 502 U.S. __ [112 S.Ct. 466], holds that reversal is not always necessary, not that it is never appropriate. We may, for example, hypothesize a case in which the district attorney stressed only the invalid ground in the jury argument, and the jury asked the court questions during deliberations directed solely to the invalid ground. In that case, we might well find prejudice. The prejudice would not be assumed, but affirmatively demonstrated.

We must therefore analyze the applicable standard of review. ■ It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case. (*People* v. *Eggers* (1947) 30 Cal.2d 676, 687 [185 P.2d 1].) If, as in this case, that is the only error, it does not appear to be of federal constitutional dimension. The court in *Griffin, supra,* 502 U.S. at page __ [116 L.Ed.2d at pages 382-383, 112 S.Ct. at page 474], while stating that "it would generally be preferable" to remove

---

[1]Our affirmation of the rule of *Green, supra,* 27 Cal.3d 1, as construed herein, should not be read as a blanket endorsement of all cases which have applied that rule, or even of all cases cited in *Green.* For example, in *People* v. *Houts, supra,* 86 Cal.App.3d at pages 1019-1022, the appellate court found insufficient evidence that the defendant had attempted to sodomize the victim, and then found that reversal of a murder conviction was compelled despite sufficient evidence to support another theory of guilt. Arguably, the insufficiency of that case would today come within the *Griffin,* not the *Green,* rule. We need not decide the question, but stress that henceforth appellate courts should analyze the issue in terms of *Griffin* as well as *Green.*

an unsupported theory from the jury's consideration, does not suggest that the failure to do so would violate the federal Constitution.

The error is therefore one of state law subject to the traditional *Watson* test (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]) applicable to such error. (See *People* v. *Lee* (1987) 43 Cal.3d 666, 671-674 [238 Cal.Rptr. 406, 738 P.2d 752] [discussing the distinction between errors of state law and federal constitutional error, and concluding that error in giving *conflicting* instructions regarding the elements of a crime is one of federal constitutional dimension].) Under *Watson,* reversal is required if it is reasonably probable the result would have been more favorable to the defendant had the error not occurred. (*People* v. *Brown* (1988) 46 Cal.3d 432, 446-447 [250 Cal.Rptr. 604, 758 P.2d 1135].)

■■■ In determining whether there was prejudice, the entire record should be examined, including the facts and the instructions, the arguments of counsel, any communications from the jury during deliberations, and the entire verdict. (See *People* v. *Hayes* (1990) 52 Cal.3d 577, 642 [276 Cal.Rptr. 874, 802 P.2d 376] [the entire record is examined to determine whether the instructions may have misled the jury to defendant's detriment].) Furthermore, instruction on an unsupported theory is prejudicial only if that theory became the sole basis of the verdict of guilt; if the jury based its verdict on the valid ground, or on both the valid and the invalid ground, there would be no prejudice, for there would be a valid basis for the verdict. We thus adopt the following test. In cases governed by *Griffin, supra,* 502 U.S. __ [112 S.Ct. 466], the appellate court should affirm the judgment unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory.

Since we ultimately conclude that this case is governed by *Griffin, supra,* 502 U.S. __ [112 S.Ct. 466], we need not decide the exact standard of review of cases governed by *Green, supra,* 27 Cal.3d 1. In the latter cases, the general rule has been to reverse the conviction because the appellate court is " 'unable to determine which of the prosecution's theories served as the basis for the jury's verdict.' " (*Id.* at p. 70.) But even this rule has not been universal. One way of finding this kind of error harmless has long been recognized. Sometimes it is possible to determine from other portions of the verdict that the jury necessarily found the defendant guilty on a proper theory. (*People* v. *Morris* (1988) 46 Cal.3d 1, 24 [249 Cal.Rptr. 119, 756 P.2d 843]; *People* v. *Boyd* (1985) 38 Cal.3d 762, 770 [215 Cal.Rptr. 1, 700 P.2d 782]; cf. *People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913] [applying the same analysis to find harmless the failure to instruct on a lesser included offense].)

There may be additional ways by which a court can determine that error in the *Green* situation is harmless. We leave the question to future cases.

### E.  *Application to This Case*

█ It remains to apply the rule enunciated to this case. The Court of Appeal found insufficient evidence to support a finding that defendant sold cocaine. This is a purely factual question. The jury was as well equipped as any court to analyze the evidence and to reach a rational conclusion. The jurors' "own intelligence and expertise will save them from" the error of giving them "the option of relying upon a factually inadequate theory." (*Griffin, supra*, 502 U.S. at p. __ [116 L.Ed.2d at pp. 382-383, 112 S.Ct. at p. 474].) Thus, the *Griffin* rule generally requiring affirmance applies.

Although the district attorney briefly argued to the jury that defendant was guilty of selling cocaine,[2] he concentrated on the transportation theory. He stated that the "easiest one [theory] in this case to agree upon, I should think, would be transportation; that the defendant transported the cocaine." The record does not affirmatively demonstrate a reasonable probability that the jury found the defendant guilty solely on the sale theory. Thus, the conviction should not have been reversed.

█ We join with the high court, however, in cautioning that unsupported theories should not be presented to the jury. (*Griffin, supra*, 502 U.S. at p. __ [112 S.Ct. at p. 474]; see also p. __ [116 L.Ed.2d at pp. 382-383, 112 S.Ct. at pp. 474-475] (conc. opn. of Blackmun, J.).) Trial courts have the duty to screen out invalid theories of conviction, either by appropriate instruction or by not presenting them to the jury in the first place. █ Although the presenting of alternate theories to the jury here does not require reversal, we stress that it was error nonetheless.

### III.  Conclusion

That portion of the judgment of the Court of Appeal reversing the conviction on count one and remanding the matter for resentencing is reversed. In all other respects the judgment of the Court of Appeal is affirmed.

Lucas, C. J., Panelli, J., Kennard, J., Baxter, J., and George. J., concurred.

---

[2]"I believe that he sold cocaine. I believe that he offered to sell it. I believe that he furnished it to someone through his runner—as Officer Romo described to you is normal in cocaine transactions—though you could agree on all of those things, the point is that all 12 of you have to agree on one, at least one."

**MOSK, J.**—I concur in the judgment.

I agree with the majority that the judgment of the Court of Appeal must be reversed insofar as it sets aside defendant's conviction on the jury's general verdict finding him guilty of the sale or transportation of cocaine.

The Court of Appeal overturned the conviction under the rule of *People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468] (*Green*): "when the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others legally incorrect, and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand." The court concluded that the "transporting" theory was correct. It came to the opposite conclusion as to the "selling" theory, finding insufficient evidence in support. Here it erred. True, the evidence that defendant actually sold cocaine was circumstantial and required various inferences. But, after viewing this evidence in the light most favorable to the verdict, I believe that a rational trier of fact could have found defendant guilty of selling cocaine beyond a reasonable doubt.

At this point, my analysis ends. So should the majority's. I simply cannot agree that we should attempt to "harmonize" the sound rule of *Green* and the dubious one of *Griffin* v. *United States* (1991) 502 U.S. __ [116 L.Ed.2d 371, 112 S.Ct. 466] (*Griffin*), in order to limit reversals to cases of "legal inadequacy" and to allow affirmances in situations of "factual inadequacy."

On a general level, the majority's "harmonization" of *Green* and *Griffin* is based on the illegitimate use of a legitimate assumption, viz., that any given jury is "reasonable." Since the very question to be determined involves the "reasonableness" *vel non* of a specific jury, to proceed as stated is to engage in *petitio principii*.

More specifically, the majority's "harmonization" of *Green* and *Griffin* is based on the illegitimate use of an illegitimate assumption, viz., that any given jury infallibly recognizes insufficient evidence as such. The use is illegitimate because, as explained above, it amounts to *petitio principii*. The assumption is illegitimate for the following reasons. First, the premise of jury "infallibility" is unsupported. Jurors may be "well equipped" to determine pure questions of fact. But their expertise does not extend to mixed questions of law and fact—which include the sufficiency of the evidence. Second, the premise of jury "infallibility" is subversive. If it obtained, we would be compelled to dismiss at the very threshold *each and every* insufficient-evidence claim raised against *any* verdict of guilt. For we would then

be required to conclude that if the evidence had indeed been lacking, the jury would *necessarily* have discerned the deficiency and could not *possibly* have rendered a guilty verdict. Thus, the bare fact of the verdict would establish the sufficiency of the evidence as a matter of law. I recognize that the foregoing "principle" seems to underlie the insufficient-evidence "analysis" in a number of recent decisions. (See, e.g., *People* v. *Thomas* (1992) 2 Cal.4th 489 [7 Cal.Rptr.2d 199, 828 P.2d 101]; *People* v. *Perez* (1992) 2 Cal.4th 1117 [9 Cal.Rptr.2d 577, 831 P.2d 1159].) All the same, it is not, and cannot be, the law.

Because I agree with the majority as to disposition only, I concur in the judgment but not in their opinion.