126 Cal.Rptr.2d 505 (2002)
103 Cal.App.4th 203
The PEOPLE, Plaintiff and Respondent,
v.
Gerardo PEREZ, Defendant and Appellant.
No. G028325.
Court of Appeal, Fourth District, Division Three.
October 29, 2002.
As Modified on Denial of Rehearing November 21, 2002.
Review Granted January 22, 2003.
*506 Michael Ian Garey, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Garrett Beaumont and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
MOORE, J.
A jury convicted defendant Gerardo Perez of possession of products containing hydriodic acid with intent to manufacture methamphetamine (Health & Saf.Code, § 11383, subd. (c)(2); count one) and possession of 28.5 grams or less of marijuana (Health & Saf.Code, § 11357, subd. (b); count two). The court imposed a two-year prison sentence.
Defendant contends the prosecution improperly relied on the theory he aided and abetted another person who intended to manufacture methamphetamine. He also challenges the sufficiency of the evidence to otherwise prove he possessed products containing hydriodic acid with the intent to manufacture methamphetamine. Finally, he claims the trial court erred by instructing the jury in accordance with the prosecution's aiding and abetting theory, admitting certain statements in violation of the corpus delicti rule and his Miranda rights (Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694), and improperly limiting the scope of his counsel's closing argument.
The court erred by giving instructions on aider and abettor liability since the facts adduced at trial did not support the prosecution's theory. The prosecution's coequal reliance on two theories of liability, one of which was not supported by the evidence, mandates reversal of the cause for a new trial. Our conclusion obviates the need to discuss defendant's contentions concerning the corpus delicti rule, admission of pre-Miranda statements to police, the scope of counsel's closing argument, and the sufficiency of the evidence. Thus, the judgment is reversed as to count one and the cause remanded for a new trial.

I

FACTS
An undercover police officer observed what he described as a "quick transaction" consistent with drug-related activities between three individuals in defendant's car and those in a van. The undercover officer directed uniformed patrol officers to initiate a traffic stop. During a consensual search of defendant's car, an officer found *507 a small purple plastic bag containing marijuana behind the front passenger's seat, and two plastic shopping bags on the floor in front of the front passenger's seat. One of the shopping bags contained approximately six pounds of red phosphorous. The other shopping bag contained approximately five pounds of powdered iodine. Officers also found a pair of yellow-stained jeans. The stain was later identified as iodide, a component of hydriodic acid. Defendant possessed cash in the amount of $717.
At trial, a forensic scientist testified that one method of manufacturing methamphetamine involved the combination of a common cold medicine, pseudoephedrine, and hydriodic acid. Red phosphorous and iodine produce hydriodic acid and iodide when mixed with water. When asked why a person would possess red phosphorous and iodine together, the expert replied, "I see no other purpose for it than to make hydriodic acid." An experienced narcotics officer agreed, although he admitted red phosphorous and iodine do have other, less common, uses. The officer also testified that it is the rule, rather than the exception, that each of the ingredients used for the manufacture of methamphetamine to be provided by a different source.
Defendant did not testify at trial or call any defense witnesses. At the scene, he claimed ownership of the iodide-stained jeans. In a statement to police, he admitted the chemicals found in the car belonged to him. He told officers that he purchased the chemicals from a woman named "Vicky" for $350. He had purchased these chemicals in similar amounts on other occasions and knew they were used in the manufacture of methamphetamine. On this occasion, he intended to take the red phosphorus and iodine to Pasadena and sell them to a man named "Antonio" for $400. Defendant met the driver of the van to buy $60 worth of marijuana. Although two other people were in the car when it was stopped, defendant claimed they had no knowledge of the illegal substances.

II

DISCUSSION
Health and Safety Code section 11383, subdivision (c)(2), provides: "Any person who, with intent to manufacture methamphetamine or any of its analogs ... possesses hydriodic acid or any product containing hydriodic acid is guilty of a felony...." The prosecution must prove the defendant possessed hydriodic acid, or the essential chemicals sufficient to manufacture hydriodic acid, with the intent to manufacture methamphetamine. (CALJIC No. 12.09.4.)
At trial, the prosecutor argued defendant possessed red phosphorous and iodine with the intent to personally manufacture methamphetamine, or with the intent to aid and abet another person in the manufacture of methamphetamine. In accordance with the prosecution's theory of the case, the court gave CALJIC Nos. CALJIC 3.00 and 3.01, standard instructions on aiding and abetting, in addition to CALJIC No. 12.09.04.
Penal Code section 31 provides: "All persons concerned in the commission of a crime ... whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission ... are principals in any crime so committed." "[S]ection 31 ... fixes responsibility on an aider and abettor for a crime personally committed by a confederate." (People v. Walker (1976) 18 Cal.3d 232, 242, 133 Cal.Rptr. 520, 555 P.2d 306.) This section abrogates the common law distinction between parties to a crime *508 thereby permitting the state to prosecute as principals persons who would have been classified as accessories before the fact or principals in the second degree. (Pen. Code, § 971; People v. Beeman (1984) 35 Cal.3d 547, 554, 199 Cal.Rptr. 60, 674 P.2d 1318.) "The doctrine in Beeman that one may be liable when he or she aids the perpetrator of an offense, knowing of the perpetrator's unlawful purpose and intending, by his or her act of aid, to commit, encourage, or facilitate commission of the offense, `snares all who intentionally contribute to the accomplishment of a crime in the net of criminal liability defined by the crime, even though the actor does not personally engage in all of the elements of the crime.' [Citation.]" {People v. Montoya (1994) 7 Cal.4th 1027, 1039, 31 Cal.Rptr.2d 128, 874 P.2d 903.)
The problem here is the prosecution presented no evidence a principal other than defendant committed a crime. (See People v. Parra (1999) 70 Cal.App.4th 222, 227, fn. 5, 82 Cal.Rptr.2d 541.) Defendant admitted the chemicals he possessed were used to manufacture methamphetamine. He also stated he intended to sell them to Antonio in Pasadena. Expert testimony established that the ingredients used in the manufacture of methamphetamine usually come from different sources. But the prosecution presented no evidence Antonio committed any crime for which defendant rendered aid or encouragement. Consequently, it was error to instruct the jury it could base its verdict on this theory. (People v. Eggers (1947) 30 Cal.2d 676, 687, 185 P.2d 1 ["It is error to give an instruction which, although correctly stating a principle of law, has no application to the facts of the case. [Citations.]"].)
Errors of this type are subject to the traditional Watson (People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243) test. (People v. Guiton (1993) 4 Cal.4th 1116, 1130, 17 Cal.Rptr.2d 365, 847 P.2d 45.) "Under Watson, reversal is required if it is reasonably probable the result would have been more favorable to the defendant had the error not occurred. [Citation.]" (Ibid.) The presumption is in favor of the verdict "unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory." (Ibid.)
We have reviewed the entire record and it is clear the prosecution relied equally on both theories presented to the jury. During her closing argument, the prosecutor described "two roads that [the jury] can take ... to lead [them] home ... home equals guilty...." She went on to state, "Aiding and abetting is one road...." "The other way we get home is if [the jury] find[s] that the defendant personally intended to manufacture meth, `meth' which is slang for methamphetamine, himself." She collectively addressed both theories when discussing the evidence.
Defense counsel adopted the prosecutor's analogy, stating, "I'm going to draw in home. And I'm going to draw two paths, one of which is listed aid and abet, one of which is intent to manufacture." Defense counsel also spent considerable energy challenging the aiding and abetting theory. At one point counsel argued, "Now throughout most of this trial it should have been pretty plainly apparent that there is not only no evidence that [defendant] was going to manufacture methamphetamine or that he even could have manufactured methamphetamine or that he had an intention to manufacture methamphetamine at any point ... the [prosecution] need[s] to somehow convince you that despite the fact that [defendant] hasn't committed the elements of that offense there's some reason why you should *509 find him guilty anyway. They do that by sort of extending principal beyond where the breaking point is." And later, "If you step on either of those primrose paths, the result you really get, what you really get to ultimately is this: You will take a person who is being accused of possession of chemicals with an intent to manufacture methamphetamine who had no such intent."
In addition to the arguments of counsel, the state of the evidence convinces us of the need for a new trial. The evidence of defendant's intent to personally manufacture methamphetamine was not strong. The prosecution presented no evidence he possessed any of the other chemicals or instruments required to complete the manufacturing process. The jury could have rejected defendant's stated intent and concluded the stain on his pants indicated manufacturing activities. However, based on our review of the record, it is probable the jury found defendant guilty solely on the aider and abettor liability theory. Therefore, the judgment must be reversed. (People v. Guiton, supra, 4 Cal.4th at p. 1131, 17 Cal.Rptr.2d 365, 847 P.2d 45.)

III

DISPOSITION
The judgment is reversed as to count one and the cause remanded for a new trial. In all other respects, the judgment is affirmed.
WE CONCUR: SILLS, P.J. and O'LEARY, J.