Filed 3/7/13  P. v. Laboy CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054850 |
| v. | (Super.Ct.No. SWF10000124) |
| CONCEPCION LAZU LABOY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  F. Paul Dickerson III, Judge.  Affirmed.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Concepcion Lazu Laboy guilty as charged of first degree murder (Pen. Code, § 187, subd. (a)), and further found true the allegation under Penal Code section 12022, subdivision (b)(1), that defendant personally used a deadly weapon, namely a knife, in the commission of that crime. The trial court sentenced defendant to serve a determinate term of one year in state prison on the allegation defendant personally used a deadly weapon, followed by an indeterminate term of 25 years to life in state prison on the first degree murder conviction.

In this appeal, defendant raises various claims of error, the details of which we recount below in our discussion of those claims. We conclude, as we explain below, that defendant's claims are meritless. Therefore, we will affirm.

**FACTS**

According to the undisputed facts, defendant and his longtime girlfriend, whom he refers to as his wife, were drug addicts who had been clean and sober for many years before relapsing into their addictions. In an effort to regain their sobriety, they joined the Santa Ana Restoration Church, an organization that counsels and assists drug and alcohol addicts. Defendant recounts in detail in his opening brief the particulars of what church involvement entailed. For our purpose, it is sufficient to note that church members lived together in homes segregated by sex. Church members were required to solicit money to fund the various homes and church activities. To that end, members would spend six to eight hours a day in shopping centers and on the streets asking for donations.

On January 5, 2010, Roumaldo Huerta, the leader of the church home where defendant had then lived for about eight months, dropped defendant and another church

2

member off to solicit money in a shopping area in Temecula. While there, defendant went into a Rite-Aid and asked a cashier for an ice pick. The cashier was unsure whether the store carried ice picks, but directed defendant to the hardware aisle. Defendant left the Rite-Aid without making a purchase. Later, defendant went to a Wal-Mart store. A security camera tape shows defendant in the sporting goods aisle where knives and ammunition are displayed.

Around 5:00 p.m., defendant entered a Big Lots store. He purchased a kitchen knife for $3.81. Defendant paid for the knife with money he took from the glass jar that contained the donations he had solicited that day. Outside in the parking lot, defendant removed the knife from its plastic packaging, and concealed it somewhere on his person. A few minutes later, Huerta arrived in a van to pick up defendant and another church member. Defendant got into the front passenger seat. After Huerta buckled his seatbelt and started to drive away, defendant attacked him with the knife. Defendant stabbed Huerta 22 times on the face, neck, and upper torso. Huerta died while trying to unbuckle his seatbelt and get out of the van.

When defendant attacked Huerta, the other church member jumped out of the van and started yelling for help. As shoppers gathered around, defendant left the knife protruding from Huerta's shoulder, got out of the van, and walked around to the driver's side. He showed his bloody hands to witnesses, and said, "I just killed this guy." Defendant was standing next to the van when the police arrived. From the backseat of the patrol car after his arrest, defendant yelled to an officer passing by, "I bought the knife at Big Lots."

3

Defendant did not testify at trial. He relied on the testimony of a fellow church member to argue that Huerta had been abusive to defendant, and that defendant bought the knife because he was afraid of him. Defendant also argued that the killing was the result of provocation by Huerta, as evidenced by defendant's voice in the background on a tape of one of the 911 calls in which he can be heard saying, "[unintelligible] he did to me for 15 months. Push me, push me, push me in a program, you know? I try to do my [unintelligible]. I got my wife in the program. He, he tried to [unintelligible] with my wife [unintelligible]."[1] From that evidence, and evidence that defendant had a one-inch cut on his hand, defense counsel argued that Huerta had provoked the killing, either through long-term abuse of defendant or by instigating a fight with defendant in the van. Defense counsel argued defendant killed Huerta as a result of either that provocation or in self-defense.

## DISCUSSION

### 1.

### SECOND DEGREE MURDER INSTRUCTION

Defendant first contends the trial court committed reversible error by failing to include the definition of second degree murder in its instructions to the jury. The record reflects the trial court instructed the jury according to CALCRIM No. 520 and CALCRIM No. 521, on murder and first degree murder, respectively, but did not include the optional paragraph in CALCRIM No. 521 that, "The requirements for second degree

---

[1] The 911 caller testified that defendant said, " 'He was messing with my wife.' Something about the wife."

murder based on express or implied malice are explained in CALCRIM No. 520, *First or Second Degree Murder With Malice Aforethought*."[2]  (See CALCRIM No. 521 (2011 ed.).)  During their deliberations, the jury asked the trial court for a definition of second degree murder.  The trial court responded, "See CALCRIM 520 for a definition of second degree murder."

Defendant argues that the omitted sentence left the jury without any guidance on how to reach a second degree murder conviction.  Although the trial court omitted that sentence from its original instructions, it referred the jury to CALCRIM No. 520 in response to the jurors' request for a definition of second degree murder.  That instruction told the jury, in pertinent part, that to prove defendant is guilty of murder, "the People must prove that:  [¶]  1.  The defendant committed an act that caused the death of (another person); [¶]  AND  [¶]  2.  When the defendant acted, he had a state of mind called malice aforethought."  The instruction also includes definitions of express and implied malice.

Defendant's contrary claim notwithstanding, the trial court in this case instructed the jury on the elements of the crime of second degree murder.  Therefore, we must reject defendant's first claim of error in this appeal.

---

[2] Defendant contends the trial court omitted from CALCRIM No. 521 the sentence, "All other murders are of the second degree."  Although that sentence appeared in the 2009-2010 version of CALCRIM No. 521, it was eliminated from the 2011 version of CALCRIM No. 521 and replaced with the optional phrase, quoted *ante*.  (See CALCRIM No. 521 (2009-2010 ed.) p. 271; CALCRIM No. 521 (2011 ed.) p. 271.)  Defendant's trial took place in 2011.  Therefore, the trial court would have instructed the jury with the 2011 version of the CALCRIM jury instructions.

**2.**

**INSUFFICIENT EVIDENCE OF LYING IN WAIT**

Defendant next contends the evidence that he committed first degree murder by lying in wait is insufficient. He further contends that the defect requires reversal of his first degree murder conviction. Defendant is incorrect.

The prosecutor presented two theories of first degree murder to the jury—murder committed with premeditation and deliberation, and murder committed by lying in wait. Defendant does not dispute the evidence is sufficient to support a first degree murder conviction based on the evidence that defendant premeditated and deliberated before he committed the murder. Instead, he cites *People v. Guiton* (1993) 4 Cal 4th 1116, and contends the error in this case consists of submitting a "legally insufficient" theory of liability to the jury because the evidence was insufficient to support a verdict based on lying in wait, and the record does not disclose whether the jury relied on that theory in finding defendant guilty of first degree murder. Defendant misunderstands the holding in that case.

The Supreme Court explained in *People v. Guiton*, *supra*, 4 Cal.4th 1116, that when "the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground." (*Id*. at p. 1129.) But when "the inadequacy is legal, not merely factual, that is, when the facts do not state a crime under the applicable statute, [reversal is required], as in *Green* [*People v. Green* (1980) 27 Cal.3d 1], the *Green* rule requiring reversal applies,

6

absent a basis in the record to find that the verdict was actually based on a valid ground." (*Ibid*., fn. omitted.)

First degree murder based on lying in wait is a legally valid theory, but one that the evidence arguably did not support. Therefore, the purported inadequacy of proof in this case is factual. Because the claimed error is one of factual insufficiency, rather than legal insufficiency, we must affirm the first degree murder conviction. That conviction is supported by evidence that defendant premeditated and deliberated before he killed Huerta, as evidenced by the fact that he bought a knife shortly before Huerta returned in the van to pick up defendant, and defendant used that knife to kill Huerta.

**3.**

**ADMISSIBILITY OF AUTOPSY PHOTOGRAPHS**

Defendant contends the trial court committed prejudicial error by allowing the prosecutor to introduce autopsy photographs of the victim over defendant's objection. We disagree.

At a pretrial hearing, defendant offered to stipulate that the victim had been alive before the incident on January 5, 2010, that defendant stabbed the victim multiple times, and that the stabbing caused the victim's death. As a result of that proposed stipulation, defendant argued that the majority of the prosecutor's photographs were irrelevant and therefore inadmissible. Defendant also argued that if offered to prove premeditation and deliberation, the photographs were cumulative to other evidence on that issue. The trial court accepted the prosecutor's offer of proof that a photograph of the victim in the driver's seat of the van was relevant to show the victim's position relative to defendant

7

and explain how the victim had wounds on the left side of his body when defendant was seated on the victim's right. In the prosecutor's view, the photograph showed "this wasn't just a fight going on, the defendant was reaching over the body. Otherwise there's no way for the victim to have suffered this cut mark over his left ear." The prosecutor argued the number of stab wounds depicted in the photographs was relevant to show "this wasn't some sort of manslaughter type thing, that this defendant had actual hatred for the victim that went beyond, you know, just some isolated argument that led to this stabbing and any sort of manslaughter type defense." The trial court overruled defendant's objection and concluded that photographs of the victim at the scene were relevant and admissible.

Defendant also objected to autopsy photographs of the victim on the grounds that they were cumulative and gruesome, in that one photograph depicts the handle of the knife sticking out of the victim's neck, while others show straw-like probes sticking out of each of the stab wounds.[3] Defendant offered to stipulate that the fatal blow was the last one, the one to the victim's neck. The trial court again overruled defendant's objections, finding that the photographs, although graphic, were probative.

"The rules pertaining to the admissibility of photographic evidence are well settled. Only relevant evidence is admissible [citations], and all relevant evidence is admissible, unless excluded under the federal or California Constitution or by statute.

---

[3] The forensic pathologist testified at trial that he used multiple colored rods and placed them in the victim's stab wounds to give an idea of the way the knife actually passed through the body, as well as to show the depth and location of each wound.

8

(Evid. Code, § 351; see also Cal. Const., art. I, § 28, subd. (d).) Relevant evidence is defined in Evidence Code section 210 as evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' The test of relevance is whether the evidence tends ' "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive. [Citations.]' [Citation.] The trial court has broad discretion in determining the relevance of evidence [citations] but lacks discretion to admit irrelevant evidence. [Citations]" (*People v. Scheid* (1997) 16 Cal.4th 1, 13-14.)

As set out above, the trial court in this case reviewed the photographs in question and found they were relevant to issues in dispute at trial. *People v. Poggi* (1988) 45 Cal.3d 306, which defendant relies on to argue otherwise, is inapposite. In that case, the trial court permitted the prosecutor over defendant's objection to introduce a photograph of the victim standing in front of a Christmas tree to prove that she had been alive, and an autopsy photograph that depicted an incision surgeons had made in the victim's throat in order to perform a tracheotomy to save her life. The Supreme Court found the first photograph relevant but inadmissible because the defendant had offered to stipulate to the fact that the victim had once been alive. The Supreme Court found the second photograph was not relevant and therefore was inadmissible because the wound in the victim's neck depicted in the autopsy photograph had not been inflicted by the defendant. (*Id.* at pp. 322-323.)

The photographs at issue in this appeal were relevant to disputed issues, as previously discussed, and did not include a photograph of the victim while he was alive.

9

In fact, the trial court excluded such a photograph from the evidence in this case. In short, we conclude the trial court did not abuse its discretion by admitting the challenged photographs into evidence. But even if we were to conclude otherwise, any purported error necessarily was harmless. Defendant did not dispute that he stabbed and killed the victim. The only issue was his mental state at the time. If anything, the photographs might have bolstered the defense claim that defendant acted in a rage after having been provoked by the demeaning way the victim had treated defendant and defendant's wife over the course of many months.

**4.**

**UNANIMITY INSTRUCTION**

As his final claim on appeal, defendant contends the trial court violated defendant's Sixth Amendment right to a jury trial because it did not instruct the jury that in order to find defendant guilty of first degree murder, the jury had to agree on the facts of that crime. Defendant is wrong.

The Supreme Court recently reiterated, " '[i]t is settled that as long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder as that offense is defined by statute, [the jurors] need not decide unanimously by which theory he is guilty. [Citations.]' [Citation.] 'Not only is there no unanimity requirement as to the theory of guilt, *the individual jurors themselves need not choose among the theories*, so long as each is convinced of guilt.' [Citation.]" (*People v. Valdez* (2012) 55 Cal.4th 82, 153.)

Defendant concedes that our state Supreme Court has rejected the specific argument he raises in this appeal that absent a unanimity instruction, the guilty verdict on

10

the first degree murder conviction violates the constitutional requirement set out in *Apprendi v. New Jersey* (2000) 530 U.S. 466, that a jury must find any fact, other than a prior conviction, that increases the maximum penalty for a crime. (See *People v. Nakahara* (2003) 30 Cal.4th 705, 712-713.) Defendant acknowledges that we are bound by the decisions of our state Supreme Court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), and he raises the issue to preserve his rights to further review in federal court.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

KING
J.

11