Filed 10/5/20  P. v. Watson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

APRIL LORRAINE WATSON,

    Defendant and Appellant

E072650

(Super.Ct.No. FVA014260)

ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING

[NO CHANGE IN JUDGMENT]

THE COURT

The court has reviewed the petition for rehearing filed September 25, 2020.  The petition is denied.  The opinion filed in this matter on September 18, 2020, is modified as follows:

On page 10, in the first full paragraph, after the third sentence, which begins, "Therefore, the jury . . . ," add footnote No. 3 at the end of the sentence and change the citation after the footnote to *Watson*, *supra*, E031790.  The paragraph and footnote should read:

1

First, we note that when ruling on a section 1170.95 petition, the court may rely upon the record of conviction, including any prior appellate opinion. (*People v. Offley* (2020) 48 Cal.App.5th 588, 596-598; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1173, 1177-1178; *People v. Drayton* (2020) 47 Cal.App.5th 965, 980.) Second, as this court noted in its prior opinion, by "misidentifying the target crime as murder, rather than assault with a firearm, the trial court's instruction had the effect of requiring the jury to find beyond a reasonable doubt that defendant aided and abetted the crime of murder." (*Watson*, *supra*, E031790.) Therefore, the jury found "that the target crime of murder was committed and that defendant aided and abetted the commission of that crime."[3] (*Watson*, *supra*, E031790.) "As a result, we conclude the denial of [defendant's] petition was proper." (*People v. Law*, *supra*, 48 Cal.App.5th at p. 825.)

There is no change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

MENETREZ
J.

---

[3] In *People v. Guiton* (1993) 4 Cal.4th 1116, 1128-1129, the court held that where the jury is presented with two legal theories, one of which is legally invalid, and there is no basis in the record to determine upon which theory the jury rendered its finding, reversal is required. Here, no legally invalid theory was presented to the jury because, as explained *ante*, the trial court's error in instructing the jury that murder was the target offense, rather than assault with a firearm, compelled the jury to find defendant aided and abetted murder even in the contested instruction. Directly aiding and abetting murder is a legally valid theory.

2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>APRIL LORRAINE WATSON,<br><br>        Defendant and Appellant. | E072650<br><br>(Super.Ct.No. FVA014260)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Ingrid A. Uhler, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, Lynne G. McGinnis and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant April Lorraine Watson filed a petition for resentencing pursuant to Penal Code section 1170.95,[1] which the court denied. On appeal, defendant contends the court erred in summarily denying her petition without proceeding to an evidentiary hearing. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Defendant's videotaped statement to the police revealed that "on November 5, 2000, defendant along with Jesse Cantu, David Chavez, and Lester 'Dwayne' Thomas, went to a house . . . three separate times, all for the purpose of getting defendant's belongings back. Defendant had lived in the house and purportedly had left some of her things there when she moved out. On their first trip, defendant exchanged words with a heavyset Hispanic woman because the woman refused to let defendant in the house and had called defendant a bitch. Defendant and her three companions were walking back to their cars, about to leave, when Dwayne urged the group to try again to get defendant's 'stuff.' Defendant returned to the front porch of the house and banged on the door, but no one responded. Defendant and her companions drove away after this second unsuccessful attempt to gain entry to the house." (*Watson*, *supra*, E031790, fn. omitted.)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] On the court's own motion, we take judicial notice of the record in defendant's appeal from the original judgment. (See *People v. Watson* (June 12, 2003, E031790) [nonpub. opn.] (*Watson*).) We take much of our factual and procedural recitation from that opinion, which was included as an exhibit in the People's motion to strike defendant's petition and was relied upon by the trial judge in summarily denying the petition.

2

"Around 10:00 p.m. that night, the group returned to the house . . . . Defendant knew that . . . Cantu had a gun with him because he had earlier shown it to her and her grandfather. Defendant, . . . Cantu and . . . Chavez went up to the front door of the house. No lights were on inside the house and no one responded when defendant knocked on the door and rang the doorbell. Dwayne . . . , who had parked his Cadillac down the street, headed to the back of the house by jumping over the fence. After . . . Chavez asked Cantu, 'Who's got Dwayne's back?,' Cantu followed Dwayne . . . and the two of them forced entry into the house by breaking a window and then kicking in the back door. When defendant heard the glass break, she threw a potted plant through a window located near the front door. [Dwayne], who by then was inside the house, opened the front door for defendant and Chavez. Once inside the house, defendant encountered a man whom she did not know standing in the kitchen near the refrigerator. Dwayne . . . and . . . Chavez immediately pushed the man into an office area off the garage." (*Watson*, *supra*, E031790.)

"When defendant entered the office after briefly looking around the house for her things, she found Cantu standing over three people who were lying belly down on the floor. One of the people on the floor was the man from the kitchen, another was Connie Estala, the woman with whom defendant had the confrontation earlier that day. The third person was Jerry McCullen, Cantu's one-time best friend. Cantu was holding all three people at gunpoint, although defendant claimed that she did not see the gun until she was leaving the room. Once in the room, defendant kicked . . . Estala in the head and asked Estala where defendant's 'stuff' was. . . . Estala had called 911 apparently as the break-in

3

was occurring. Unbeknownst to defendant and her companions, that phone line was open, and the call was being recorded as Estala [lay] on the floor in the office. According to the transcript of that 911 call, defendant yelled, 'Where is my shit now?' When Estala answered, 'I don't know . . . ,' defendant again said, 'Where's my stuff at? Huh?' The tape then picked up the sound of a gunshot followed by defendant saying, 'Hey, oh enough!' The tape picked up the sound of two more gunshots followed by the sound of labored breathing." (*Watson*, *supra*, E031790.)

". . . Cantu testified for defendant and admitted that he shot and killed all three victims. Cantu stated that he shot and killed . . . McCullen and then had to kill the two others because they had witnessed that shooting. Cantu testified, in pertinent part, that he killed McCullen because McCullen had previously made death threats against defendant whom McCullen believed was a snitch. Cantu stated that as he stood there holding the gun on McCullen, he remembered those threats and just snapped. Cantu had never told defendant about the threats McCullen made against her life. According to Cantu, defendant was not in the room when he shot and killed the three victims. Cantu estimated that the whole incident from the time he entered the house to the time he left after shooting and killing the victims was possibly less than two minutes." (*Watson*, *supra*, E031790.)

Since defendant was not the actual killer of the three murder victims, "the prosecutor relied on two theories of aiding and abetting to prosecute defendant, namely, that defendant aided and abetted either the crime of first degree murder or the crime of assault with a firearm of which murder was the natural and probable consequence." (*Watson*, *supra*, E031790.) The court gave the jury a version of CALJIC No. 3.02, which

4

erroneously instructed it that the crime of murder, rather than assault with a firearm, was the target offense under the latter theory that it must find defendant aided and abetted in order to convict her of murder. (*Watson*, *supra*, E031790.) On April 5, 2002, the "jury found [defendant] guilty . . . of three counts of first degree murder and one count of residential burglary." (*Ibid.*) The jury additionally found true an allegation that a principal was personally armed with a firearm in the commission of a felony. (§ 12022, subd. (a)(1).) The court sentenced defendant to a term of imprisonment consisting of three, consecutive, indeterminate terms of 25 years to life, plus a determinate term of one year. (*Watson*, *supra*, E031790.)

On appeal from the judgment, defendant challenged the natural and probable consequences theory of liability for murder. Defendant contended insufficient evidence supported the jury's verdict finding her guilty of aiding and abetting a crime of which first degree murder was a natural and probable consequence. Defendant also maintained the jury instructions on the natural and probable consequences theory of criminal liability were incorrect and that the error violated her due process right to a fair trial. (*Watson*, *supra*, E031790.) This court affirmed the judgment. (*Ibid.*)

On January 4, 2019, defendant filed a petition for resentencing pursuant to section 1170.95, alleging she was not the actual killer, did not act with an intent to kill or aid and abet the murder, and was not a major participant or act with reckless disregard for human life in the commission of a crime. The People filed a motion to strike defendant's petition for resentencing, arguing section 1170.95 was unconstitutional; the People further argued that defendant was ineligible for relief because, in its opinion on appeal from the

5

judgment, this court had found defendant aided and abetted Cantu with an intent to kill and/or the evidence established that defendant was a major participant in the burglary acting with reckless indifference to human life.

At the hearing on defendant's petition, the court noted it had read the petition, the People's response, and this court's opinion on appeal from defendant's judgment. The court noted: "In the Court of Appeals opinion, it does say that they conclude the evidence is sufficient to support the first-degree murder verdict on both theories of liability the prosecutor relied on at trial. [¶] So based on the fact that the evidence did support the fact that the defendant aided and abetted in the commission of first-degree murder, I'll indicate that she has not made a prima facie showing that she falls within the parameters for resentencing under [section] 1170.95, and the petition for resentencing is denied."

## II. DISCUSSION

Defendant contends the court erred in summarily denying her petition without proceeding to an evidentiary hearing. We hold any error was harmless.

"Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), effective January 1, 2019, amended the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder. Senate Bill 1437 also permits, through new Penal Code section 1170.95 [(Stats 2018, ch. 1015)], . . . an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. Section 1170.95, subdivision (b), prescribes the information

6

that must be included in the petition.  Section 1170.95, subdivision (c), requires the sentencing court to review the petition; determine if it makes a prima facie showing the petitioner falls within the provisions of section 1170.95; and, '[i]f the petitioner has requested counsel, . . . appoint counsel to represent the petitioner.'  After counsel has been appointed, the prosecutor is to file and serve a response to the petition; and the petitioner may file a reply.  If the petitioner has made a prima facie showing he or she is entitled to relief, the court must issue an order to show cause (§ 1170.95, subd. (c)) and conduct a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts (§ 1170.95, subd. (d)(1))."  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 323 (*Verdugo*), fn. omitted, review granted Mar. 18, 2020, S260493.)

"[T]he relevant statutory language, viewed in context, makes plain the Legislature's intent to permit the sentencing court, before counsel must be appointed, to examine readily available portions of the record of conviction to determine whether a prima facie showing has been made that the petitioner falls within the provisions of section 1170.95—that is, a prima facie showing the petitioner may be eligible for relief because he or she could not be convicted of first or second degree murder following the changes made by Senate Bill 1437 to the definition of murder in sections 188 and 189."  (*Verdugo*, *supra*, 44 Cal.App.5th at p. 323.)  Thus, the court can "deny [a] section 1170.95 petition on the merits without first appointing counsel and allowing the prosecutor and appointed counsel to brief the issue of [a defendant's] entitlement to relief [where] properly based on [a] ruling [the defendant] was ineligible for relief as a matter of law."  (*Ibid*.)

7

"To effectuate [its] legislative purpose, Senate Bill 1437 added a crucial limitation to section 188's definition of malice for purposes of the crime of murder. New section 188, subdivision (a)(3), provides, 'Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.'" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 326.)

"New section 189, subdivision (e), in turn, provides with respect to a participant in the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), in which a death occurs—that is, as to those crimes that provide the basis for the charge of first degree felony murder—that the individual is liable for murder 'only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.'" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 326.)

Errors in the adjudication of retroactive statutory resentencing provisions are reviewed for harmless error. (*People v. Johnson* (2016) 1 Cal.App.5th 953, 968 [applying the *People v. Watson* (1956) 46 Cal.2d 818 standard of reversal only where the defendant can establish prejudice from trial court's error]); *People v. Simms* (2018) 23 Cal.App.5th 987, 998 [applying the *Chapman v. California* (1967) 386 U.S. 18 standard where error may be deemed harmless only if appellate court concludes beyond a reasonable doubt that

8

the deprivation did not affect the outcome of the proceeding]; *People v. Law* (2020) 48 Cal.App.5th 811 (*Law*) [summary denial of § 1170.95 reviewed for harmless error].)

Here, whichever standard of harmless error we apply, we hold that any error in failing to proceed to an evidentiary hearing was harmless. We agree that, as this court noted in its prior opinion, the evidence was "sufficient to support the jury's implied finding that defendant aided and abetted Cantu in committing first degree murder." (*Watson*, *supra*, E031790.) That evidence consisted of defendant's two prior unsuccessful attempts to recover her possessions, her knowledge that Cantu had a gun when they returned on the third occasion, and the fact that she drove Cantu to the house. (*Ibid*.) Thus, this court held, "the jury could reasonably infer that defendant knew Cantu intended to shoot and kill some or all of the people in the house." (*Ibid.*) Therefore, "the jury could find that she aided and abetted the commission of the first degree murders." (*Ibid.*)

Defendant maintains this court's holding in the prior appeal, that sufficient evidence supported a determination she aided and abetted the murders with an intent to kill, was "solely a judicial deference to a jury verdict" and "had no bearing on the present issue." She argues that from this court's prior opinion, "it cannot be said definitively that the jury found appellant guilty based on direct aiding and abetting murder, rather than based on a natural and probable consequences theory of murder." Defendant maintains there was just a "mere *possibility* that a jury *could have* unanimously found . . . defendant guilty under a direct theory." We disagree.

9

First, we note that when ruling on a section 1170.95 petition, the court may rely upon the record of conviction, including any prior appellate opinion. (*People v. Offley* (2020) 48 Cal.App.5th 588, 596-598; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1173, 1177-1178; *People v. Drayton* (2020) 47 Cal.App.5th 965, 980.) Second, as this court noted in its prior opinion, by "misidentifying the target crime as murder, rather than assault with a firearm, the trial court's instruction had the effect of requiring the jury to find beyond a reasonable doubt that defendant aided and abetted the crime of murder." (*Watson*, *supra*, E031790.) Therefore, the jury found "that the target crime of murder was committed and that defendant aided and abetted the commission of that crime." (*Ibid.*) "As a result, we conclude the denial of [defendant's] petition was proper." (*People v. Law*, *supra*, 48 Cal.App.5th at p. 825.)

## III.  DISPOSITION

The order denying defendant's section 1170.95 petition for resentencing is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                    Acting P. J.

We concur:


MILLER
                    J.


MENETREZ
                    J.

10