[No. B211281. Second Dist., Div. Six. Dec. 14, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN ALLAN COPASS, Defendant and Appellant.

## COUNSEL

David A. Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan D. Martynec and Robert S. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, P. J.**—Here we consider the interaction between Vehicle Code sections 2800.1 and 2800.2.[1] An officer must activate a red light when in pursuit of a traffic offender who attempts to flee. We conclude the officer may deactivate his red light during the period he momentarily loses sight of the offender.

---

[1] All further statutory references are to the Vehicle Code unless stated otherwise.

Steven Allan Copass appeals a judgment following conviction of evading a police officer with a willful disregard for the safety of others (count 1), and driving with a suspended or revoked license (count 2), with findings that he served two prior prison terms within the meaning of Penal Code section 667.5, subdivision (b). (§§ 2800.2, subd. (a), 14601.1, subd. (a).)

## FACTS AND PROCEDURAL HISTORY

On February 16, 2008, California Highway Patrol Officer Chris Warren flew in a surveillance airplane over the Whitley Gardens area of Highway 46. The highway is a designated "safety corridor" due to the many roadway accidents and traffic deaths occurring there. Warren watched motorists for speed and other traffic law violations, and informed California Highway Patrol Officer Scott Koolman of the violators. Koolman patrolled the highway in a marked patrol vehicle.

That afternoon, Warren saw a motorcyclist traveling westbound at high speed. He notified Koolman that the motorcyclist was approaching him. Koolman had stopped along the highway to issue a citation to another motorist.

Koolman estimated that the motorcyclist was traveling at 90 miles an hour. He activated his radar and received a reading of 91 miles an hour. As the motorcyclist approached, Koolman motioned to him to drive to the shoulder and stop.

The motorcyclist, later identified as Copass, nodded, slowed, and drove to the shoulder. As Koolman walked toward the motorcycle, Copass "just took off . . . at a rapid acceleration" without signaling. Koolman returned to his vehicle, activated its lights, and pursued Copass at speeds exceeding 100 miles per hour.

Koolman lost sight of Copass when the highway dropped away toward the Estrella River. He turned off the emergency lights as he drove and looked for the motorcycle along side roads. Koolman also notified Warren that he lost sight of Copass. Although he was driving without emergency lights, Koolman stated that he "was still in pursuit of the vehicle, still actively looking and in fresh pursuit." He also stated that police emergency lights sometimes endanger other motorists because the lights cause "panic stopping."

Within five minutes, Warren saw Copass driving along River Grove Road and notified Koolman. Immediately, Koolman drove to intercept Copass. He saw the motorcycle stop at a stop sign prior to entering the highway. Koolman delayed activating his lights and siren because he did not want to

alert Copass that he was nearby. Koolman stated that he intended to "get on top of [Copass's] vehicle and have a better chance of him not ditching me again."

Copass suddenly turned right onto the highway, forcing an oncoming vehicle from its lane of travel to avoid a collision. Warren saw the turn and described it as a failure to yield to oncoming traffic. Koolman activated the emergency lights and siren, and pursued Copass who was travelling at 90 miles per hour. Near the crest of a hill, Copass turned left across a double yellow line. Warren observed the turn from the airplane and stated that the turn was dangerous because of limited visibility of oncoming traffic.

Koolman turned his patrol car in front of the motorcycle, blocking its path. Copass dismounted his motorcycle and surrendered.

At the time he evaded Officer Koolman, Copass's driver's license had been revoked following his third conviction for driving under the influence of alcohol.

The jury convicted Copass of evading a police officer with a willful disregard for the safety of others (count 1), and driving with a suspended or revoked license (count 2). In a separate proceeding, the trial court found that Copass served two prison terms within the meaning of Penal Code section 667.5, subdivision (b). The trial court sentenced Copass to a three-year term, consisting, in part, of a two-year midterm sentence for count 1, plus an additional one-year term for a prior prison term enhancement. It also imposed a 10-day county jail sentence for count 2, with credit for time served. The court imposed a $600 restitution fine and a stayed $600 parole revocation restitution fine, and awarded Copass 300 days of presentence custody credits.

Copass appeals and contends that his failure to yield to oncoming traffic prior to entering the highway cannot serve as a predicate traffic offense pursuant to sections 2800.1 and 2800.2.

## DISCUSSION

Copass argues that his failure to yield to oncoming traffic does not support a finding of "a willful or wanton disregard for the safety of persons or property" because Koolman was not in pursuit at the time and his patrol car then did not display its emergency lights. (§ 2800.2, subd. (a); see *People v. Shakhvaladyan* (2004) 117 Cal.App.4th 232, 237 [11 Cal.Rptr.3d 590] ["Substantial evidence of all the conditions set forth in Vehicle Code section 2800.1, subdivision (a) must be presented in order to satisfy the felony provisions of Vehicle Code section 2800.2."], disapproved on other grounds by *People v.*

*Hudson* (2006) 38 Cal.4th 1002, 1011, fn. 3 [44 Cal.Rptr.3d 632, 136 P.3d 168].) He asserts that he was not evading Koolman at the time of the unsafe turn into traffic. Copass claims that the trial court's instruction regarding this "invalid theory of law" is reversible error. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129 [17 Cal.Rptr.2d 365, 847 P.2d 45] [reversal required where verdict rests upon inadequate legal ground].)

■ Section 2800.2, subdivision (a) provides: "If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished . . . ." Subdivision (b) of that section defines "willful or wanton disregard for the safety of persons or property" as committing three or more traffic violations that are assigned a traffic violation point pursuant to section 12810.

■ Section 2800.2 incorporates and expressly requires a violation of section 2800.1. In relevant part, that section provides: "(a) Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor . . . if all of the following conditions exist: [¶] (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary." The obvious purpose of the light and sound requirements of the pursuing vehicle is to inform a person that a peace officer's vehicle is in pursuit. (*People v. Estrella* (1995) 31 Cal.App.4th 716, 723 [37 Cal.Rptr.2d 383].)

For several reasons, we reject Copass's contentions.

■ First, although Koolman turned off his emergency lights for the five minutes that he lost sight of Copass, there was but one pursuit. At the inception of the pursuit, Koolman activated his emergency lights. He reactivated the lights after he saw Copass stopped at the stop sign before turning onto the highway. Koolman testified that he was in "fresh pursuit" although Copass had evaded him by driving along a side road. It is a reasonable inference that Copass was aware of the pursuit because initially he suddenly drove from the shoulder as Koolman approached, drove at high speed along a side road to the highway, and turned into traffic forcing an oncoming vehicle into a left turn lane. Thus Copass received notice of the pursuit and the purpose of the statute is satisfied. (*People v. Estrella, supra*, 31 Cal.App.4th 716, 723.) Section 2800.1, subdivision (a) does not require that the pursuing officer continuously activate the emergency lights and siren.

Second, the prosecutor relied on four Vehicle Code violations to establish "a willful or wanton disregard for the safety of persons or property." (§ 2800.2, subds. (a), (b).) The four violations, all of which are a traffic violation point pursuant to section 12810, included driving in excess of the 55-mile-per-hour limit, failure to yield the right of way, unsafe turning, and driving without a valid driver's license. (§ 2800.2, subd. (b).)

The trial court instructed regarding the pursuit requirements of section 2800.1, subdivision (a), and the jury, in the exercise of its factfinding duty, could find the statute satisfied. The question thus becomes one of substantial evidence to support a conviction of section 2800.2. (*People v. Guiton, supra,* 4 Cal.4th 1116, 1129 ["If the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground."].) Subdivision (b) of section 2800.2 requires evidence of three or more violations that are assigned a traffic point pursuant to section 12810. Here the prosecutor presented evidence of four violations. Any asserted error is harmless because it is not reasonably probable that Copass would have received a more favorable result absent evidence of the unsafe turn into oncoming traffic. (*Guiton,* at pp. 1129–1130 [standard of review].)

The judgment is affirmed.

Yegan, J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 18, 2010, S179445. George, C. J., did not participate therein.