Filed 12/2/21  P. v. Ervin CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DALE LEE ERVIN,<br><br>    Defendant and Appellant. | F079348<br><br>(Super. Ct. No. F18906793)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Robert Gezi and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Dale Ervin was charged with driving with willful or wanton disregard for the safety of persons or property while fleeing from pursuing peace officers (Veh. Code, § 2800.2, subd. (a) [count 1]); unlawful possession of heroin (Health & Saf. Code, § 11350, subd. (a) [count 2]); unlawful possession of methamphetamine (*id.*, § 11377, subd. (a) [count 3]); and driving under the influence of a drug (Veh. Code, § 23152, subd. (f) [count 4]). The information further alleged that he previously was convicted of a qualifying "strike" offense under the Three Strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and served seven separate prison terms (*id.*, § 667.5, former subd. (b)). Prior to trial, defendant admitted the special allegations. Following trial, the jury found him guilty as charged. Thereafter, the trial court exercised its discretion and struck two prior prison term enhancements.

Defendant received an aggregate prison sentence of nine years on count 1: a doubled middle term of four years plus five years for five prior prison term enhancements. He also received concurrent 365-day jail terms on counts 2, 3, and 4. Defendant was ordered to pay a $500 restitution fine (Pen. Code, § 1202.4) and two $50 laboratory analysis fees (Health & Saf. Code, § 11372.5, subd. (a)). A $500 parole revocation fine (Pen. Code, § 1202.45) was imposed and suspended. Four $40 court operations assessments (*id.*, § 1465.8) and four $30 court facilities assessments (Gov. Code, § 70373) were imposed and stayed.

In his opening brief, defendant makes several contentions. First, the court "should reverse [the] felony reckless evading conviction because [the conviction] is not supported by substantial evidence .…" (Capitalization omitted.) Second, the court "should reverse [the] felony reckless evading conviction because [it] committed instructional error … by giving the jury incomplete and misleading instructions on the siren element." (Capitalization omitted.) Third, the court "should vacate [defendant]'s restitution fine

2.

because the trial court abused its discretion by arbitrarily and irrationally determining that [he] is able to pay the fine .…" (Capitalization omitted.) Finally, the court "should vacate [defendant]'s laboratory analysis fee because the trial court violated [his] right to due process by imposing this assessment without a determination that [he] is presently able to pay." (Capitalization omitted.) We conclude: (1) substantial evidence supported the reckless evasion conviction; (2) the court did not commit instructional error; and (3) the restitution fine and the laboratory analysis fees need not be vacated.

In a supplemental brief, defendant argues that the five prior prison term enhancements must be stricken in view of a recent amendment to Penal Code section 667.5, subdivision (b), enacted by Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill No. 136) (Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020). The Attorney General agrees that these enhancements must be stricken. We accept this concession and strike the five prior prison term enhancements. We remand the matter for resentencing to allow the trial court to exercise its sentencing discretion in light of the changed circumstances. (*People v. Jennings* (2019) 42 Cal.App.5th 664, 682.)

## STATEMENT OF FACTS

Fresno County Deputy Sheriff Chapple was on duty in the early morning hours of October 2, 2018. He was operating a patrol car that had a "red and blue emergency light bar on the top" and was "fully marked" with "sheriffs stars on both sides" and the word " 'Sheriff' on the back." Chapple was dressed in his standard uniform, which consisted of a long-sleeved shirt "with Fresno County Sheriffs patches on both shoulders," badge, duty belt, green pants, and steel boots.

At approximately 1:47 a.m., Chapple observed a "white four-door Honda" "pass a car" and "run a stop sign" at the intersection of Princeton Avenue and Thesta Street. He switched on "Code 3 emergency lights"—four flashing red and blue lights "on the front bumper" as well as flashing red and blue lights and solid red and blue lights on the light

3.

bar—and pursued the Honda, which "accelerated" westbound on Princeton Avenue "in an attempt to flee." Traveling at a speed of 50 miles per hour in a 25-mile-per-hour residential area, the Honda "ran a four-way stop sign" at the intersection of Princeton Avenue and Clark Street. It then turned onto southbound Clark Street and continued for four blocks, ignoring three more stop signs. After the Honda "ran the [third] stop sign" and turned onto eastbound Clinton Avenue "over a double solid yellow line," Chapple "initiated [the] siren" "to warn" an oncoming car, which "had to completely stop … in order to avoid being hit." The Honda "turned again over a double solid yellow line onto" Thesta Street. By this point, it was traveling at a speed of "35, 40 miles an hour." The Honda headed northbound on Thesta Street, disregarded another stop sign, and then "died in the middle of the intersection" of Terrace Avenue and Thesta Street. The pursuit lasted "[t]hree to five minutes tops" and ended "around … 30 seconds" after Chapple turned on the siren.

Defendant, the driver of the Honda, was apprehended. Crystal methamphetamine, heroin, and a glass pipe were found on his person. California Highway Patrol Officers Carreno and Tucker arrived on the scene at approximately 2:00 a.m. to conduct a DUI evaluation. Carreno, a drug recognition expert, noticed that while the weather was "pretty cold" and defendant was wearing a white tank top, defendant was sweating so profusely that he had "a shine on his body and on his head as well." During questioning by Tucker, defendant admitted that he "did meth earlier" and "had smoked some marijuana earlier." He was also "nodding off," i.e., he "was just not able to stay awake or … kept … leaning over," which Carreno identified as the demeanor of someone "coming down from their high." Because defendant was "on the nod," Tucker "didn't conduct the full range of field sobriety tests." Carreno opined that defendant exhibited objective signs of intoxication consistent with being under the influence of methamphetamine.

Thereafter, defendant was transported to the hospital for a blood draw. Subsequent testing revealed 0.89 milligrams per liter of methamphetamine, a "potentially toxic range" that would impair a person's ability to drive. Testing also revealed 0.16 nanograms per milliliter of cannabis, an amount that would likely not "overpower" "the stimulation and sleep deprivation aspects of [the] methamphetamine used" by defendant.

At trial, on cross-examination, Chapple affirmed that he typically activated his vehicle's siren "to get someone's attention," "[w]hether it's the car that [he's] attempting to pull over or the surrounding cars." On recross-examination, he testified that "[t]here were no vehicles" on Clark Street during that stretch of the pursuit.

## DISCUSSION

### I. Substantial evidence supported defendant's conviction for reckless evasion on count 1

a. *Standard of review*

"To determine the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the prosecution to determine whether it contains [substantial] evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.) We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) "We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether ' "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' " (*People v. Tripp*, *supra*, at p. 955, italics omitted.) "This standard of review … applies to circumstantial evidence. [Citation.] If the circumstances, plus all the logical inferences the jury might have drawn from them, reasonably justify the jury's findings, our opinion that the circumstances might also

5.

reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." (*Ibid*.)

"Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis what[so]ever is there sufficient substantial evidence to support it." (*People v. Redmond*, *supra*, 71 Cal.2d at p. 755.) " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' " (*People v. Lee* (2011) 51 Cal.4th 620, 632.)

b. *Analysis*

Vehicle Code section 2800.1, subdivision (a) reads:

"Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor punishable by imprisonment in a county jail for not more than one year if all of the following conditions exist:

"(1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.

"(2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.

"(3) The peace officer's motor vehicle is distinctively marked.

"(4) The peace officer's motor vehicle is operated by a peace officer … and that peace officer is wearing a distinctive uniform."

Vehicle Code section 2800.2, subdivision (a), which "incorporates and expressly requires a violation of [Vehicle Code] section 2800.1" (*People v. Copass* (2009) 180 Cal.App.4th 37, 41), reads:

6.

"If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 [of the Vehicle Code] and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year.…"

The record—viewed in the light most favorable to the prosecution—establishes that defendant operated a Honda sedan while he was under the influence of methamphetamine in the early morning hours of October 2, 2018. He passed another vehicle and failed to yield at a stop sign at the intersection of Princeton Avenue and Thesta Street. Deputy Sheriff Chapple, who was wearing his standard uniform and driving a patrol car displaying "sheriffs stars on both sides" and the word " 'Sheriff' on the back," observed this violation. He turned on the emergency lights, which included flashing red lights in front of and atop his car, and followed the Honda. Subsequently, defendant accelerated to 50 miles per hour in a 25-mile-per-hour residential area. He ignored another stop sign as he turned onto Clark Street and then ran three more stop signs. After defendant ran the third stop sign and turned onto Clinton Avenue, Chapple activated his siren to alert an oncoming car, which was able to avoid a collision. Approximately 30 seconds later, after turning onto Thesta Street and ignoring yet another stop sign, defendant's vehicle eventually broke down in the middle of the Terrace Avenue–Thesta Street intersection.

Defendant does not dispute that Chapple wore a distinctive uniform, operated a motor vehicle that was distinctively marked and exhibited at least one lighted red lamp visible from the front, and sounded a siren about 30 seconds before the pursuit ended. Nevertheless, he argues:

"The People's evidence supporting count one showed that the pursuit lasted for about three to five minutes, and that the officer did [*sic*] activate his siren until the final thirty seconds of the pursuit. [Citation.] The police officer's activation of his siren is a necessary prerequisite for a defendant to be guilty of reckless evading. [Citation.] So, prior to the time

7.

when the officer first activated his siren, the prerequisite conditions for felony reckless evading did yet not exist.  [¶] … [¶]

> "[Defendant]'s … felony reckless evading conviction is not supported by substantial evidence.…  [A]ll four prerequisite conditions of [Vehicle Code] section 2800.1, subdivision (a), must have been satisfied before a defendant can be guilty under [Vehicle Code] section 2800.2 for evading an officer with 'willful or wanton disregard.'  [Citations.]  Here, the four prerequisite conditions of [Vehicle Code] section 2800.1, subdivision (a), were not satisfied until the last thirty seconds of the pursuit, when the officer activated his siren.  [Citation.]  And the record does not contain sufficient evidence that [defendant] recklessly evaded the officer during the final thirty seconds of this pursuit—the time when all four prerequisite conditions of [Vehicle Code] section 2800.1, subdivision (a), were met.…"

We disagree with the notion that Vehicle Code section 2800.1, subdivision (a)(2) mandates a siren's activation at some point during a pursuit.  The provision reads:  "The peace officer's motor vehicle is sounding a siren *as may be reasonably necessary*."  (Italics added.)  "The court's role in construing a statute is to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.'  [Citations.]  In determining the Legislature's intent, a court looks first to the words of the statute.  [Citation.]  '[I]t is the language of the statute itself that has successfully braved the legislative gauntlet.'  [Citation.]  [¶]  When looking to the words of the statute, a court gives the language its usual, ordinary meaning.  [Citations.]  If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.  [Citations.]"  (*People v. Snook* (1997) 16 Cal.4th 1210, 1215; accord, *People v. Hudson* (2006) 38 Cal.4th 1002, 1009 (*Hudson*).)  The unequivocal wording of Vehicle Code section 2800.1, subdivision (a)(2) indicates that siren use is situational rather than compulsory.  Had the Legislature intended otherwise, the phrase "as may be reasonably necessary" would have been excluded.  (See *Hudson*, *supra*, at p. 1010 ["[I]nterpretations that render statutory terms meaningless as surplusage are to be avoided."].)

8.

Next, we disagree with defendant's claim that "the prerequisite conditions for felony reckless evading" "were not satisfied until the last thirty seconds of the pursuit, when [Chapple] activated his siren." As noted, defendant does not dispute the presence of three of the four Vehicle Code section 2800.1, subdivision (a) conditions from the outset: "a red light," "a distinctively marked vehicle," and "a peace officer in a distinctive uniform." (*Hudson*, *supra* 38 Cal.4th at p. 1008.) Regarding the "siren" condition (*ibid.*), we reiterate that activation thereof is not mandatory. Based on the record, a rational trier of fact could have found that siren use was not reasonably necessary for the greater part of the pursuit. At trial, Chapple testified that he would use a siren to capture the attention of a perpetrator and/or other motorists. After witnessing defendant's failure to yield at a stop sign on Princeton Avenue in the early morning hours of October 2, 2018, Chapple turned on the emergency lights. Given defendant's immediate reaction, i.e., accelerating to 50 miles per hour in a 25-mile-per-hour residential area and turning onto southbound Clark Street to evade Chapple, one may logically infer that the lights alone were sufficient to capture defendant's attention. Additionally, Chapple testified that "[t]here were no [other] vehicles" on the four-block stretch of Clark Street, obviating the need for a siren to warn others prior to the near-collision on Clinton Avenue.[1]

Finally, we disagree with defendant's claim that "the record does not contain substantial evidence that [he] recklessly evaded [Chapple] during the final thirty seconds of this pursuit .…" He maintains:

---

[1] An earlier case from Division Five of the Second Appellate District reversed the defendant's reckless evasion conviction because "[Vehicle Code] Section 2800.1, subdivision (a)(2) requires the officer be using a siren" and "there was no substantial evidence that a siren was sounded." (*People v. Shakhvaladyan* (2004) 117 Cal.App.4th 232, 237–238, overruled in part by *Hudson*, *supra* 38 Cal.4th 1002, 1011, fn. 3.) However, the holding never considered whether siren activation was "reasonably necessary" under the circumstances.

> "There is no evidence that, during these final thirty seconds, [defendant] was traveling at an excessive or unsafe speed, came anywhere near any other cars, or otherwise posed a substantial safety risk to anyone."

This assertion is belied by the record. At the time Chapple sounded his siren, approximately 30 seconds before the end of the pursuit, defendant was on Clinton Avenue heading eastbound toward an oncoming motorist. After the siren was activated, the motorist was alerted and able to "completely stop," averting an accident. Defendant, on the other hand, continued to flee. His speed apparently decreased to "35, 40 miles an hour" by the time he turned onto northbound Thesta Street. However, since his Honda "died in the middle of the intersection" of Terrace Avenue and Thesta Street shortly thereafter, one may logically infer that the speed reduction was the result of car trouble and not of defendant's own volition.

We conclude that substantial evidence supported defendant's reckless evasion conviction.

## II. The trial court did not commit instructional error

### a. *Background*

Prior to closing arguments, the court instructed the jury:

> "[CALCRIM No. 2181 (Evading Peace Officer):] The defendant is charged in Count One with evading a peace officer, in violation of Vehicle Code Section 2800.2. To prove that the defendant is guilty of this crime the People must prove beyond a reasonable doubt that; one, a peace officer driving a motor vehicle was pursuing the defendant; two, the defendant who was also driving a motor vehicle willfully fled from or tried to elude the officer intending to evade the officer; three, during the pursuit the defendant drove with willful or wanton disregard for the safety of persons or property; and, four, all of the following were true: A, there was at least one lighted red lamp from the front of the peace officer's vehicle, B, the defendant either saw or reasonably should have seen the lamp, C, the peace officer's vehicle was sounding a siren as reasonably necessary, D, the peace officer's vehicle was distinctively marked and, E, the peace officer was wearing a distinctive uniform. [¶] … [¶]

10.

"[CALCRIM No. 2182 (Evading Peace Officer: Misdemeanor):] Evading a peace officer, in violation of Vehicle Code Section 2800.1, is a lesser-included offense to evading a peace officer as charged in Count One. To prove the defendant is guilty of this crime the evidence must prove beyond a reasonable doubt that, one, a peace officer driving a motor vehicle was pursuing the defendant, two, the defendant who was also driving a motor vehicle willfully fled from or tried to elude the officer intending to evade the officer and, three, all of the following were true: A, there was at least one lighted red lamp visible from the front of the peace officer's vehicle, B, the defendant either saw or reasonably should have seen the lamp, C, the peace officer's vehicle was sounding a siren as reasonably necessary, D, the peace officer's vehicle was distinctively marked and, E, the peace officer was wearing a distinctive uniform."

b. *Standard of review*

"The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law." (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

c. *Analysis*

"[T]he court is required to give correct jury instructions on the general principles of law relevant to issues raised by the evidence." (*People v. Anderson* (2015) 232 Cal.App.4th 1259, 1279.) Here, the court issued CALCRIM Nos. 2181 and 2182, both of which highlighted the need to establish each of the four Vehicle Code section 2800.1, subdivision (a) conditions. Their wording of these conditions did not materially deviate from the statutory language. "[T]he trial court's obligation is to state the law correctly." (*People v. Runnion* (1994) 30 Cal.App.4th 852, 858.) We find that the court met its obligation.

Defendant contends that the court "committed instructional error by giving the jury incomplete and misleading instructions … on the siren element." He specifies:

"Given the facts here (i.e., the officer failing to first activate his siren until the final thirty seconds of the three-to-five-minute pursuit), … CALCRIM No. 2181 is highly misleading because the 'as reasonably necessary' phrase of the siren element incorrectly suggests that the siren element can be satisfied even if the officer does not activate his siren at all." (Boldface and italics omitted.)

Defendant's argument is based on an interpretation of Vehicle Code section 2800.1, subdivision (a)(2) that we have rejected. (See *ante*, at pp. 7–9.) We find no instructional error.[2]

## III.     The restitution fine and laboratory fees need not be vacated

### a. *Background*

According to the probation officer's report filed on May 17, 2019, defendant was 42 years old and lived with his girlfriend. He obtained a GED in 1997 "while in state prison" and "received training for firefighting while in prison." Defendant was unemployed and performed "side jobs for income." He used marijuana and methamphetamine "[d]aily" since the ages of 10 and 13, respectively. Defendant related that he was "in good physical health" and "denied any mental health conditions." The probation officer recommended a restitution fine of $4,500 (Pen. Code, § 1202.4) and two laboratory analysis fees totaling $100 (Health & Saf. Code, § 11372.5, subd. (a)), inter alia.

At the May 17, 2019 sentencing hearing, defense asked the court "not to impose any of those fines or fees." He reasoned:

> "Our office was appointed to [defendant]'s case back in, I believe, October of 2018. At that time—well, he's been in custody ever since. He never bailed out. The form that our office fills out with individuals before we take appointment would show that he was not working, did not have an ability to pay, that's why our office was appointed, so I would ask that—I have a note here that he was homeless at the time, so I would ask that the court not impose any of those fines and fees. I would object to the imposition of any of those fines or fees."

The court pronounced:

---

[2]     Having examined the merits, we need not address (1) the Attorney General's claim of forfeiture; or (2) defendant's claim of ineffective assistance of counsel, which is premised on a finding of forfeiture.

"All right. Well, you know, I don't really know the specifics of how inmate employment works, but I do know that there is a provision for him to be assigned work duties for which he is compensated at some level. The court is going to impose a restitution fine under [Penal Code sections] 1202.4 and 1202.45 in the amount of $500, not the recommended $4,500. I do find that his lack of resources coming into the prison commitment today would justify limiting the restitution fine assessments to his ability to address those while in custody.

"I am required, however, to impose lab fees of $50 for each of the Health and Safety Code counts for a total of $100 pursuant to Health and Safety Code [section] 11372.5.…"

b. *Analysis*

i. Restitution fine

Defendant contends that the court "violate[d] [his] right to due process under the federal and California constitutions" by imposing a $500 restitution fee "because the record clearly demonstrates that [he] is indigent and has no ability to pay the fine." He asks us to either "vacate [the] $500 restitution fine" or, in the alternative, "remand for the trial court to properly consider [his] ability to pay the $500 restitution fine without regard to the arbitrary and irrational conclusions on which it relied." We conclude that neither is warranted.

We note that defendant cites *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or fees. (*Id*. at p. 1164.) Our court has written extensively about *Dueñas*. (See, e.g., *People v. Montes* (2021) 59 Cal.App.5th 1107; *People v. Son* (2020) 49 Cal.App.5th 565; *People v. Lowery* (2020) 43 Cal.App.5th 1046; *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*).) Even if we agreed with *Dueñas*, it is factually inapposite: in the instant case, the court expressly determined that defendant had the ability to pay the restitution fine.

13.

A challenge to a court's determination that a defendant had the ability to pay a fine is reviewed for abuse of discretion. (See *People v. Lewis* (2009) 46 Cal.4th 1255, 1321.) " 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [Citation.]' [Citations.]" (*Id.* at p. 1286; see *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [reviewing court "required to uphold [a discretionary] ruling if it is correct on any basis, regardless of whether such basis was actually invoked"].)

" 'Ability to pay does not necessarily require existing employment or cash on hand.' [Citation.] '[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's present ability but may consider a defendant's ability to pay in the future.' [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]" (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837, italics omitted; accord, *Aviles*, *supra*, 39 Cal.App.5th at p. 1076.) "Every able-bodied person committed to the custody of the Secretary of the Department of Corrections and Rehabilitation is obligated to work as assigned by department staff .…" (Cal. Code Regs., tit. 15, § 3040, subd. (a); see Pen. Code, § 2700.) "State prison inmates who perform assigned work are compensated for it." (*People v. Frye* (1994) 21 Cal.App.4th 1483, 1487.) Depending on the prisoner's skill level, prison wages range from $12 to $56 per month. (Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).) The state may garnish between 20 and 50 percent of those wages to pay the restitution fine. (Pen. Code, § 2085.5, subds. (a), (c).)[3]

---

[3] In his brief, defendant alleges: "[I]t is well known that there is a high unemployment rate in California's prisons." He cites no authority in support of this charge.

14.

Here, one may infer from the record that defendant "has the ability to pay the fines and fees imposed upon him from probable future wages, including prison wages" over the course of his sentence. (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076.) At the time of the sentencing hearing, defendant was 42 years old and had a high school equivalency credential. He performed "side jobs" for income, demonstrating "some past income-earning capacity." (*People v. Johnson* (2019) 35 Cal.App.5th 134, 139 (*Johnson*).) Defendant previously received firefighter training and reported that he remained in good physical health and did not suffer from any mental health conditions." (See *People v. Frye*, *supra*, 21 Cal.App.4th at p. 1487 ["If defendant was ineligible for prison work assignment, it was incumbent upon him to alert the court to any such disability."].) Even assuming defendant could only work for the minimum prison wage of $12 per month, given the length of his four-year sentence (see at p. 16, *post*), he would have sufficient time to earn the amount needed to pay the fine. (See *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035.) "In our view, this forecloses a meritorious inability to pay argument." (*Ibid.*) Since defendant "has ample time to pay … from a readily available source of income while incarcerated" (*Johnson*, *supra*, 35 Cal.App.5th at p. 140), we uphold the court's ability-to-pay finding.

ii. Laboratory analysis fees

Defendant contends that the court "violated [his] right to due process under the federal and California constitutions by imposing a $100 laboratory analysis fee [citation] without a determination of [his] ability to pay." He once again cites *Dueñas* and asks us to either "vacate the laboratory analysis fee" or, in the alternative, "remand for the trial court to consider [his] ability to pay this assessment." Even if we agreed with *Dueñas*, in view of the record (see *ante*, at p. 15), any error arising from the court's failure to make an ability-to-pay finding with respect to the laboratory analysis fees was harmless beyond

a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jones*, *supra*, 36 Cal.App.5th at p. 1035; *Johnson*, *supra*, 35 Cal.App.5th at pp. 139–140.)

**IV.    The five prior prison term enhancements must be stricken in light of Senate Bill No. 136**

At the time defendant was sentenced, Penal Code section 667.5, former subdivision (b) provided, in part:

> "[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony .…"

After defendant was sentenced, but while his case was still pending on appeal, the Legislature enacted Senate Bill No. 136 (Stats. 2019, ch. 590, § 1).  Now, Penal Code section 667.5, subdivision (b) provides, in part:

> "[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code .…"

Defendant asserts that Senate Bill No. 136 applies retroactively to the case and asks us to strike the five prior prison term enhancements because none of the underlying offenses was a sexually violent offense.  The Attorney General agrees.  We accept this concession.  The five prior prison term enhancements are stricken.  The matter is remanded for resentencing to allow the trial court to exercise its sentencing discretion in light of the changed circumstances.  (*People v. Jennings*, *supra*, 42 Cal.App.5th 664, 682.)  We take no position on how the court should exercise said discretion.

16.

## **DISPOSITION**

The five prior prison term enhancements are stricken.  We remand the matter for further proceedings consistent with our opinion.  Thereafter, the trial court shall prepare an amended abstract of judgment accordingly and transmit certified copies thereof to the appropriate authorities.  In all other respects, the judgment is affirmed.


LEVY, J.

WE CONCUR:


HILL, P.J.


FRANSON, J.

17.