Filed 2/4/22  P. v. Sechler CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL EDWARD BUCK SECHLER,<br><br>Defendant and Appellant. | F079614<br><br>(Super. Ct. No. BF172572A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Matthew Aaron Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Michael Edward Buck Sechler was convicted by jury trial of felony evading a peace officer, misdemeanor resisting arrest, and misdemeanor driving without a license.  On appeal, he contends (1) the trial court erred by incorrectly instructing the

jury on the felony charge of evading a peace officer, (2) insufficient evidence supports the conviction of evading a peace officer, and (3) the court must strike a prior prison term enhancement due to the passage of Senate Bill No. 136. We strike the prior prison term enhancement and affirm the judgment as modified.

## PROCEDURAL SUMMARY

On October 18, 2018, the Kern County District Attorney charged defendant of felony evading a peace officer (Veh. Code, §§ 2800.1, 2800.2;[1] count 1); misdemeanor resisting, delaying, or obstructing a peace officer (Pen. Code, § 148, subd. (a)(1); count 2); and misdemeanor driving without a driver's license (§ 12500, subd. (a); count 3). The information further alleged defendant had suffered two prior "strike" convictions within the meaning of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), and had served three prior prison terms (Pen. Code, § 667.5, subd. (b)). Defendant pled not guilty to all counts.

On June 10, 2019, a jury found defendant guilty on all counts. In a bifurcated proceeding, the trial court found two of the prior strike allegations true, one of the prior prison term allegations true, and the remaining special allegations not true.

On July 11, 2019, the trial court sentenced defendant to six years on the felony conviction of evading a peace officer and an additional one year for the prior prison term enhancement. On the misdemeanor conviction of resisting arrest, the court sentenced defendant to 120 days to be served concurrently with count 1. On the misdemeanor conviction of driving without a license, the court sentenced defendant to 120 days to be served concurrently with count 2.

Defendant timely filed a notice of appeal.

---

[1] All statutory references are to the Vehicle Code unless otherwise noted.

2.

**FACTS**

On June 8, 2018, California Highway Patrol (CHP) Officer Austin Simmons was on patrol near Vista Grande Drive, south of State Route (SR) 178, in Kern County.  He was wearing a CHP uniform and driving a marked patrol car.  The patrol car was black and white with a CHP star emblem on both front doors and the words "California Highway Patrol" written on the back of the vehicle.  The patrol car was equipped with a light bar on the roof and a siren.

At approximately 6:20 p.m. that evening, Officer Simmons was driving southbound on Vista Grande Drive and observed a blue sedan traveling that same road in the opposite direction.  As the two cars passed at approximately 15 to 20 miles per hour, the driver of the blue sedan looked directly at Officer Simmons.  Officer Simmons got a good look at the driver and noticed he was not wearing his seatbelt.

Officer Simmons turned his patrol car around to follow the blue sedan.  He briefly lost sight of the blue sedan, which had turned at a nearby stop sign.  As Officer Simmons approached the stop sign, he looked to his right and saw the blue sedan traveling eastbound on SR 178 at an "accelerated high rate of speed," which he visually estimated at 80 to 90 miles per hour.

Officer Simmons initiated his "red forward emergency lights" and attempted to overtake the blue sedan.  The blue sedan got behind a slower moving vehicle, followed it at a close distance, and attempted to pass it on the right dirt shoulder.  Officer Simmons positioned his patrol car directly behind the blue sedan.  Once the slower vehicle moved out of the way, the blue sedan "made an abrupt right turn on to southbound Paul's Place [Drive] … at a high rate of speed … caus[ing] the rear wheel of the sedan to lose traction and slide into the opposite lane of traffic …."

The blue sedan continued at an estimated speed of 60 miles per hour and was approaching Paul's Place General Store where approximately four to five vehicles and 10

3.

pedestrians were located. Officer Simmons estimated the pedestrians were 75 to 100 feet from the road.

The blue sedan then "turned to the left driving on the opposite side of the roadway." The driver of the blue sedan parked the vehicle on top of sagebrush and began to flee on foot into a desert field.

Officer Simmons exited his patrol car and began to pursue the driver on foot. He lost sight of the driver and, turning around, noticed the blue sedan was on fire. He returned to the sedan to try to put the fire out but, by that time, it was fully engulfed in flames. Officer Simmons called for emergency fire personnel to respond and then resumed his search for the driver. He eventually found the driver lying in a group of sagebrush bushes and placed him under arrest.

At trial, Officer Simmons identified defendant as the driver of the blue sedan. He testified that several driving maneuvers defendant made were violations of the Vehicle Code, including following other vehicles at an unsafe distance, traveling faster than the posted speed limit, attempting to pass another vehicle on the dirt shoulder, traveling at an unsafe speed when pedestrians are near the road, driving into oncoming traffic, making an unsafe turn, and evading a peace officer.

Officer Simmons never activated his siren during the pursuit. When asked why, he explained, "By the time I positioned my patrol vehicle directly behind the blue sedan it quickly made that right turn [onto Paul's Place Drive] and the pursuit was over." He estimated the vehicle pursuit lasted "a minute, maybe a little over a minute." He initiated the pursuit at approximately 6:20 p.m. and arrested defendant at 6:33 p.m.

## DISCUSSION

I.    SECTIONS 2800.1 AND 2800.2

A.    Jury Instructions

The offense of evading a peace officer under sections 2800.1 and 2800.2 (count 1) requires proof, among other things, the pursuing peace officer's motor vehicle was

4.

"sounding a siren as may be reasonably necessary." Defendant contends the trial court erred in instructing the jury, as to count 1, that "*As reasonably necessary* means as reasonably necessary to inform a person that a peace officer's vehicle is in pursuit." We determine the court properly instructed the jury on this element of the offense.

Whether a jury instruction is proper is a question of law. (*Harb v. City of Bakersfield* (2015) 233 Cal.App.4th 606, 617.) We apply a de novo standard of review in evaluating whether a jury instruction contains a correct statement of the law. (*Ibid.*; *People v. Lopez* (2011) 198 Cal.App.4th 698, 708.)

"In construing a statute, this court is to ascertain the intent of the Legislature in order to effectuate the law's purpose." (*People v. Estrella* (1995) 31 Cal.App.4th 716, 722 (*Estrella*).) "Because the language of a statute is generally the most reliable indicator of the Legislature's intent, we look first to the words of the statute, giving them their ordinary meaning and construing them in context. If the language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1009 (*Hudson*).)

"[W]e consider the statute read as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework. [Citations.] We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246.) "[W]e generally must 'accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and have warned that '[a] construction making some words surplusage is to be avoided.' [Citations.] [¶] … 'Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357–358.)

Turning to the statutes in question, we observe that section 2800.1 provides, in relevant part: "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty" of violating the statute "if all of the following conditions exist: [¶] (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] (3) The peace officer's motor vehicle is distinctively marked. [¶] (4) The peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, and that peace officer is wearing a distinctive uniform." (§ 2800.1, subd. (a)(1)-(4).)

A person charged with evading a peace officer may be subject to heightened penalties if the public is endangered during the pursuit. Section 2800.2 provides, in relevant part: "If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year." (§ 2800.2, subd. (a).) Notably, "[s]ection 2800.2 incorporates and … expressly requires a violation of section 2800.1." (*Estrella*, *supra*, 31 Cal.App.4th at p. 722.)

On appeal, defendant argues the trial court erred in instructing the jury because the element of the offense that the peace officer's patrol car "is sounding a siren as may be reasonably necessary" is not limited to what is reasonably necessary to put a fleeing individual on notice that he or she is being pursued by a peace officer. Defendant contends the phrase also includes that which is reasonably necessary to alert other persons (e.g., pedestrians and other vehicle operators) of the danger posed by the vehicle pursuit. Given the proximity of pedestrians to the pursuit, defendant argues the jury, if

6.

properly instructed, could have determined sounding the siren was reasonably necessary to alert those bystanders. Defendant claims the error had the effect of relieving the prosecution of the burden of proving an element of the offense.[2]

Defendant contends the "guiding cases at bar" to determine the Legislature's intent in enacting section 2800.1 are *Hudson*, *Estrella*, and *People v. Copass* (2009) 180 Cal.App.4th 37 (*Copass*). We consider those cases and others below.

In *Estrella*, this court considered the purpose of the statutory requirement in section 2800.1 that the officer's car be "distinctively marked" (§ 2800.1, subd. (a)(3)). We wrote, "we adopt a commonsense approach to this question, one which looks at the indicia identified with the pursuit vehicle which are supplemental to a red light and siren, to ascertain whether a person fleeing is on reasonable notice that pursuit is by a peace officer. Stated somewhat differently, under section 2800.1, does the person know or reasonably should know that a police vehicle is in pursuit?" (*Estrella*, *supra*, 31 Cal.App.4th at p. 723.) We concluded, "to construe 'distinctively marked' to mean simply exhibiting a red light and sounding a siren would result in section 2800.1, [subdivision (a)(3)[3]] (requiring the vehicle to be 'distinctively marked') being considered as mere surplusage." (*Ibid.*) In essence, we held subdivision (a)(3)[4] of section 2800.1 set forth an independent element of the offense that could not be met by mere proof of other elements of the offense. (*Ibid.*)

---

**2**     The trial court also instructed the jury on the lesser included (misdemeanor) offense of evading a peace officer. In doing so, however, the court did not include a definition for the phrase "as may be reasonably necessary." On appeal, defendant notes the difference between the two instructions but does not raise an appealable issue arising from the differing instructions.

**3**     When *Estrella* was decided, current subdivision (a)(3) of section 2800.1 was denominated subdivision (c) of said statute. The language of the subdivision did not change.

**4**     See footnote 3.

In *Hudson*, the California Supreme Court considered a nearly identical issue. The primary question before the court was "what factors should be considered in determining whether a pursuing peace officer's motor vehicle is 'distinctively marked'? " (*Hudson*, *supra*, 38 Cal.4th at p. 1006.) The court noted the "statute requires four distinct elements, each of which must be present: (1) a red light, (2) a siren, (3) a distinctively marked vehicle, and (4) a peace officer in a distinctive uniform." (*Id*. at p. 1008.) The court wrote, "To conclude that the presence of a red light and a siren would satisfy the statutory requirement that the pursuing police car be 'distinctively marked' would be inconsistent with the statutory requirement that *all* of its conditions be met, and it would render the phrase 'distinctively marked' in subdivision (a)(3) of section 2800.1 mere surplusage." (*Id*. at p. 1010.)

Defendant suggests the statement in *Hudson* that four distinct elements must be present including, specifically, "a siren," stands for the proposition that an activated siren is required whenever a violation of section 2800.1 or 2800.2 is charged. Defendant argues the trial court's instruction therefore violates the holding of *Hudson*—that each element of section 2800.1 must be met and that no single element can be met by mere proof of the other elements.

We do not read *Hudson* as requiring an activated siren. That issue was not before the court in *Hudson* and it appears the court was merely using a shorthand reference for the subdivision (a)(2) element of section 2800.1. Moreover, interpreting *Hudson* in that manner would violate a main interpretive principle relied upon in *Hudson*—it would render the phrase "as may be reasonably necessary" mere surplusage. Unlike the element of section 2800.1 under consideration in *Hudson*, the element of an activated siren is conditioned on being "reasonably necessary." Thus, the statute contemplates there may be appropriate circumstances where a conviction under section 2800.1 or section 2800.2 may be validly obtained even though a siren is not actually activated during the pursuit.

In *Copass*, the court considered whether an officer in pursuit of a traffic offender may deactivate his red light when he momentarily loses sight of the offender. Answering in the affirmative, the *Copass* court stated, "The obvious purpose of the light and sound requirements of the pursuing vehicle is to inform a person that a peace officer's vehicle is in pursuit." (*Copass*, *supra*, 180 Cal.App.4th at p. 41.)

The interpretation of subdivision (a)(2) of section 2800.1 was not at issue in any of the foregoing cases. We agree, however, they are instructive. *Estrella* and *Copass* both concluded that a purpose (but not necessarily the sole purpose) of the statute was to provide an offender notice that an officer is pursuing him or her. (*Estrella*, *supra*, 31 Cal.App.4th at p. 723; *Copass*, *supra*, 180 Cal.App.4th at p. 41.) That conclusion was given support in *Hudson* wherein the court wrote: "[F]or purposes of section 2800.1, a pursuing peace officer's vehicle is 'distinctively marked' if its outward appearance during the pursuit exhibits, *in addition* to a red light and a siren, one or more features that are reasonably visible to other drivers and distinguish it from vehicles not used for law enforcement so as to give reasonable notice to the fleeing motorist that the pursuit is by the police." (*Hudson*, *supra*, 38 Cal.4th at pp. 1010–1011, italics omitted.)

In *People v. Byrd* (2016) 1 Cal.App.5th 1219, the court considered whether "the unrelated elements of evading" or the defendant's admission he knew police were pursuing him were sufficient to satisfy the requirement in section 2800.1 that pursuing officers wore distinctive uniforms. The *Byrd* court concluded they were not. (*Byrd*, *supra*, at p. 1225.) The *Byrd* court also noted section 2800.1 does not require that an offender *actually* know it is the police who are in pursuit. (*Byrd*, *supra*, at p. 1225.)

The closest case we have found on the issue is one that was cited in defendant's opening brief but not addressed by the People, namely *People v. Shakhvaladyan* (2004)

9.

117 Cal.App.4th 232 (*Shakhvaladyan*).[5]  In *Shakhvaladyan*, the court held the totality of circumstances in that case demonstrated a police officer's motorcycle was "distinctively marked" where the officer activated his " 'front' red and blue strobe lights and a fixed red light" and the offender began to comply by pulling over.  (*Id.* at p. 237.)  *Hudson* disapproved the *Shakhvaladyan* court's use of the totality of circumstances test to find a distinct element of the offense (i.e., a distinctively marked motor vehicle) was met.  (*Hudson*, *supra*, 38 Cal.4th at pp. 1010-1011, fn. 3.)

Notwithstanding, *Shakhvaladyan* is relevant to defendant's appeal.  There, the court reversed the defendant's felony conviction under sections 2800.1 and 2800.2 because "there was no substantial evidence that a siren was sounded or that [the pursuing officer] wore a uniform."  (*Shakhvaladyan*, *supra*, 117 Cal.App.4th at p. 237.)  The court held, "Section 2800.1, subdivision (a)(2) requires the officer be using a siren."  (*Ibid.*)  Because *Hudson* did not comment on this aspect of *Shakhvaladyan*, the latter point may still be considered good law.  However, we disagree with *Shakhvaladyan* on that point.  To hold that section 2800.1, subdivision (a)(2) *requires* a pursuing officer to use his or her siren under all circumstances would render the phrase "as may be reasonably necessary" mere surplusage.

We have not found (and the parties have not cited) any cases holding or otherwise suggesting that a purpose of the phrase "as may be reasonably necessary" includes that which is reasonably necessary to provide notice of the vehicle pursuit to pedestrians, other drivers, or other third parties.

The People note there is a separate provision of the Vehicle Code designed to alert pedestrians and other drivers of a potentially dangerous officer-involved pursuit.  Section 21055 exempts authorized emergency vehicles from complying with various

---

[5]  Disapproved on other grounds in *Hudson*, *supra*, 38 Cal.4th at pages 1010-1011, footnote 3.

traffic safety rules and regulations if certain conditions are met.  Among those conditions are the "driver of the vehicle sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to other drivers and pedestrians."  (§ 21055, subd. (b).)

Unlike section 2800.1, section 21055 expressly articulates the reason an activated siren and displayed forward red light are required under the statute—to warn other drivers and pedestrians.  The purposes of section 21055, as noted by other courts, are to "provide a 'clear and speedy pathway' " (*Peerless Laundry Services v. City of Los Angeles* (1952) 109 Cal.App.2d 703, 707) for the emergency vehicle, and to "avoid the presumption of negligence that arises from the violation of a safety rule or regulation." (*City of Sacramento v. Superior Court* (1982) 131 Cal.App.3d 395, 403.)  Of course, the existence of a separate statute designed to warn drivers and pedestrians that authorized vehicles are traveling in response to an emergency does not resolve the issue before us since it is possible for separate statutes to share a common purpose.

A predecessor version of section 2800.1 yields additional clues as to the intent of the Legislature in including the "sounding a siren" element in this statute.  Prior to 1982, section 2800.1 read as follows:

> "Every person who, while operating a motor vehicle, hears a siren and sees at least one lighted lamp exhibiting a red light emanating from a vehicle which is distinctively marked and operated by a member of the California Highway Patrol, a member of the California State Police, or any peace officer of any sheriff's department or police department wearing a distinctive uniform and who, with the intent to evade the officer, willfully disregards such siren and light, and who flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor." (Stats. 1981, ch. 600, § 2, p. 2317.)

For a violation to have occurred under this prior version of the statute, the offender must have heard the siren, seen the red lighted lamp, and willfully disregarded them. Unmistakably, the reason for the siren in this prior version of the statute is to provide

notice *to the fleeing motorist*. Whether bystanders were alerted to the potentially dangerous situation of a vehicle fleeing an officer in pursuit was not a consideration of the Legislature in this prior version of the statute.

We are unaware of any basis to conclude the Legislature intended to broaden the purpose of using a siren in later amending the statute. Moreover, we fail to see why the Legislature would intend criminal culpability under a statute designed to prohibit and dissuade an operator of a motor vehicle from evading a peace officer to be conditioned on whether third parties were alerted to the potential danger of the situation. Defendant has not presented any convincing rationale as to why criminal culpability should be so conditioned or that the Legislature so intended. In our view, to so hold would lead to an absurd result by allowing an offender to escape the consequences of his or her unlawful behavior based upon circumstances unrelated to the offense itself. Moreover, such a construction would not promote the general purpose of the statute which is to help ensure a vehicle operator's compliance with a duly authorized officer's command to pull over. While we fully appreciate the usefulness of a siren to alert bystanders of a potentially dangerous situation, we conclude the Legislature did not intend to condition criminal culpability under section 2800.1 on whether bystanders were alerted to a peace officer motor vehicle pursuit.

We hold the trial court did not err in instructing the jury. The trial court's definition that "*As reasonably necessary* means as reasonably necessary to inform a person that a peace officer's vehicle is in pursuit" is a correct statement of the law. Because there was no error, we need not consider defendant's argument concerning prejudice.

B.      Sufficiency of the Evidence

Defendant contends substantial evidence does not support the element of count 1 that "[t]he peace officer's motor vehicle is sounding a siren as may be reasonably necessary." Defendant's contention is premised on his supporting assertion that

12.

providing notice to pedestrians and other vehicles of an unsafe condition is an intended purpose of that element of the offense. We have determined, in the preceding section of this opinion, the Legislature did not intend to condition criminal culpability under section 2800.1 on whether third parties were also alerted to the unfolding situation. Accordingly, our inquiry is limited to whether substantial evidence supports the element as correctly defined by the trial court.

"The proper test to determine a claim of insufficient evidence in a criminal case is whether, on the entire record, a rational trier of fact could find [defendant] guilty beyond a reasonable doubt." (*People v. Barnes* (1986) 42 Cal.3d 284, 303.) "In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court 'must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.] … '[O]ur task … is twofold. First, we must resolve the issue in the light of the *[w]hole record* …. Second, we must judge whether the evidence of each of the essential elements … is *substantial* ….' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576–577, italics added.) Substantial evidence in the criminal context is evidence that is "reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Id.* at p. 578.)

Defendant seemingly concedes substantial evidence exists to support the element at issue as clarified by the trial court. Quoting from defendant's opening brief, "[F]rom the record, a reasonable trier of fact may determine the driver was aware of and fleeing the peace officer …." If the sounding of a siren is only required when reasonably necessary to inform a person that a peace officer's vehicle is in pursuit, as we have determined, then defendant's concession acknowledges the sounding of a siren was not necessary in this case. We believe this concession is warranted.

Considering the entire record in a light most favorable to the People, substantial evidence exists by which a reasonable jury could have found, beyond a reasonable doubt, that it was *not* necessary for Officer Simmons to sound his siren to provide defendant notice he was being pursued by a peace officer. Officer Simmons was in a vehicle distinctively marked as a CHP patrol car with a light bar on the roof and was wearing his CHP uniform when defendant looked directly at him. They passed each other at a speed of only 15 to 20 miles per hour. Officer Simmons activated his forward red emergency lights and came up directly behind defendant. Defendant then made an abrupt turn onto a different road and, with Officer Simmons in pursuit, continued at a speed of approximately 60 miles per hour before abandoning his vehicle and fleeing on foot as Officer Simmons brought his patrol vehicle to a stop. A reasonable jury could conclude, beyond a reasonable doubt, defendant was aware he was being pursued by an officer of the law and that activation of the siren was unnecessary. Substantial evidence supported the conviction.

## II. PRIOR PRISON TERM ENHANCEMENT

Defendant contends Senate Bill No. 136 applies retroactively to him and requires his prior prison term enhancement be stricken. The People concede and we agree.

Senate Bill No. 136 (2019−2020 Reg. Sess.) amended Penal Code, section 667.5, subdivision (b) to limit prior prison term enhancements to only prior terms that were served for a sexually violent offense as defined by Welfare and Institutions Code section 6600, subdivision (b). (Pen. Code, § 667.5, subd. (b), as amended by Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.) Defendant's prior prison term was served for a 2014 residential burglary, not for a sexually violent offense, and thus it must be stricken.

"In general, when an error affects part of a sentence, [an appellate court] must remand for a full resentencing on all counts and allegations. [Citation.] But where … an enhancement is erroneously imposed and the trial court has already imposed the

14.

maximum possible sentence, a remand for resentencing is unnecessary. [Citation.] [An appellate court] may simply strike the enhancement and affirm the judgment as modified." (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 772–773.) The same procedure is warranted where, as here, a maximum sentence is validly imposed but subsequent legislation requires the enhancement be stricken. Accordingly, we adhere to that procedure.

**DISPOSITION**

The one-year prior prison term enhancement (Pen. Code, § 667.5, subd. (b)) is stricken. As modified, the judgment is affirmed. We direct the trial court to prepare an amended abstract of judgment and to forward the amended abstract to the Department of Corrections and Rehabilitation.

FRANSON, J.

WE CONCUR:


HILL, P. J.


DETJEN, J.

15.